STATE OF CONNECTICUT *v.* WILLIAM EVANS
(12968)

HEALEY, CALLAHAN, GLASS, COVELLO and HULL, Js.

(One justice dissenting)

Argued October 9—decision released December 15, 1987

*Michael E. O'Hare,* assistant state's attorney, with whom were *John M. Massameno* and *Frank D'Addabbo,* assistant state's attorneys, for the appellant (state).

*Hubert J. Santos,* for the appellee (defendant).

GLASS, J. The state has appealed from a decision of the trial court granting the defendant's motion to dismiss a substitute information. Specifically, the state claims that the trial court erred when it held that the inability of the state to allege the specific date of the occurrence of the crimes charged warranted a dismissal. We agree.

According to the affidavit in support of the warrant for the defendant's arrest, Sharon K. of Manchester came to the Glastonbury police department on December 14, 1984, and reported that her son, J, then fourteen years old, had been sexually abused by the defendant. She stated that while attending a family counseling session in New Hampshire on December 11, 1984, she had learned about the incident from her son.

According to Sharon K. the incident occurred at Evans House at 203 Williams Street, Glastonbury. Evans House is an alcoholic half-way house and the defendant, William Evans, was the executive director of the program. He resided at the house until his resignation in mid-October, 1984. Sharon K. described her family's relationship with the defendant as a close friendship. J attended Evans House during the summer of 1984 for counseling for alcohol abuse. On December 17, 1984, J was interviewed by Glastonbury police officer S. MacKinnon. J told MacKinnon that on a weekend in July, 1984, he was in the Evans House television room with the defendant and the defendant asked him if he "had ever done it with a man before?" J said "No" and ignored the defendant. The defendant suddenly grabbed J by the upper arm, pulled him to his feet and pushed him into the defendant's bedroom upstairs. In the bedroom the defendant took his clothes off and then undressed J. J stated that the defendant began feeling and nibbling his body and forced him to submit to fellatio for about ten minutes. The defendant then made J perform fellatio on him, and after doing so for a short time the defendant abruptly released him and went into the bathroom. J dressed and went back downstairs. J also recalled that the defendant later told him not to say anything about the incident because he, the defendant, was an important person in the community and it would hurt many people if anything was said about the matter. From other interviews MacKinnon was informed that the defendant terminated work at Evans House in mid-October, 1984, and his resignation was effective November 1, 1984. After his resignation at Evans House the defendant became a referrals counselor in New Hampshire until he resigned on December 19, 1984, after he had been confronted with the allegations of Sharon K. that he had sexually abused her son.

Initially the defendant was charged in an undated six count information with several sexual offenses arising out of the alleged incident. In counts one and two of the information he was charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a).[1] In counts three and four he was charged with sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1).[2] In count five he was charged with unlawful restraint in violation of General Statutes § 53a-95 (a).[3] In count six he was charged with risk of injury to a minor in violation of General Statutes § 53-21.[4] The original information alleged that

[1] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

[2] "[General Statutes] Sec. 53a-71. SEXUAL ASSAULT IN THE SECOND DEGREE: CLASS C FELONY: NINE MONTHS NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under [fifteen] years of age, or (2) mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual intercourse, or (3) physically helpless, or (4) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (5) in the custody of law of detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person.

"(b) Sexual assault in the second degree is a class C felony for which nine months of the sentence imposed may not be suspended or reduced by the court."

[3] "[General Statutes] Sec. 53a-95. UNLAWFUL RESTRAINT IN THE FIRST DEGREE: CLASS D FELONY. (a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose the latter to a substantial risk of physical injury.

"(b) Unlawful restraint in the first degree is a class d felony."

[4] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such

the offenses were committed "on or about July, 1984," in Glastonbury. On April 24, 1985, the defendant filed a motion for a bill of particulars requesting specifically the "date and time of the offense." On February 4, 1986, a substitute[5] information was filed changing count two to the charge of an attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2)[6] and 53a-70 (a), and changing count four to an attempt to commit sexual assault in the second degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-71 (a) (1). The allegation as to the time of the offense and the allegations in all of the other counts remained the same as charged in the original information.

In response to the defendant's motion, on February 10, 1986, the state filed a bill of particulars alleging that the offenses occurred "during the late afternoon, early evening hours, on one of the last two weekends in July, 1984." This response restricted the occurrence of the offenses to one of four possible dates, July 21, 22, 28 or 29, 1984. Prior to trial on February 10, 1986, the defendant filed a motion to dismiss the information on the ground that "as to date and

a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[5] In the pleadings and briefs, the parties refer to this substitute information as an amended information. In this opinion, we will refer to this information as a substitute information.

[6] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT; RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

time" the information was "not specific enough for him to assert an alibi defense, to confront his accuser, and in general to adequately present a defense." On the same day the trial judge denied this motion.

On February 13, 1986, after the jury had been selected and sworn, the defendant filed another motion requesting further particulars and in the alternative to dismiss the charges. In this motion he renewed his request for a more specific date of the offenses. The defendant also alleged that he had evidence to support an alibi defense for three of the four days disclosed by the state's response to his motion for a bill of particulars. After oral argument the trial court again denied the motion to dismiss.

On the following day, February 14, 1986, counsel for the defendant provided the court with the affidavits of three alibi witnesses. The affiants ostensibly provided the defendant with alibis for July 22, 28 and 29, 1984. No alibi witness or affidavit was offered for July 21, 1984, one of the days disclosed by the state as a possible date of the offenses. The trial court then reconsidered the defendant's motion to dismiss, reversed its prior decision and granted the defendant's motion to dismiss on February 14, 1986. The case was dismissed before the presentation of any evidence. In rendering its decision the trial court stated: "I want it completely understood that [this decision] is in no way related to my opinion as to whether or not the defendant is guilty or not guilty of these charges. That is not my function . . . [this decision] is not to be considered by anyone [as] an opinion by me that I think that the defendant is innocent of these charges. My decision is not to be given any weight with regards to innocence or guilt."

Immediately the state excepted to this ruling and requested permission to appeal. At the request of the defendant the case was dismissed with prejudice and

over the exception of the defendant the court granted the state's request for permission to appeal. After the appeal had been filed in the Appellate Court the defendant moved to dismiss the appeal, claiming that the state's appeal was barred by double jeopardy. After oral argument the Appellate Court denied the motion without an opinion on April 10, 1986. Thereafter, pursuant to Practice Book § 4023 this court transferred the appeal to itself.

The basic claim of the state on appeal is that the trial court erred in granting the defendant's motion to dismiss the substitute information. We agree. We reject the defendant's claim that the state's appeal be dismissed on the ground of double jeopardy, or in the alternative that the action of the trial court be affirmed.

I

It is undisputed that the jury had been sworn but that the state had presented no evidence before the motion to dismiss was granted. Moreover, in its oral memorandum of decision the trial court went to great pains to disclaim any factual finding of the defendant's guilt or innocence. Nonetheless, the defendant claims that " 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.' " *United States* v. *Scott,* 437 U.S. 82, 97, 98 S. Ct. 2187, 57 L. Ed. 2d 65 (1978), quoting *United States* v. *Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S. Ct. 1349, 51 L. Ed. 2d 642 (1977). In support of his claim the defendant asserts that it is the general rule in Connecticut that "[t]ime is not an essential ingredient of the crime of rape and it can be proved to have been committed at any time before the date of the information and within the period of the Statute of Limitations unless the date should become mate-

rial in some way, as where a defense of alibi is to be made." *State* v. *Horton,* 132 Conn. 276, 277, 43 A.2d 744 (1945).

The defendant claims that his defense is alibi and the date of the alleged crime is material to his defense. Generally, any time that an alibi is asserted as a defense to a criminal charge the precise time that the offense is alleged to have been committed is material to the defense. But the effectiveness of the alibi claim is a factual question that is best left to the trier for determination after all of the evidence has been presented. Moreover, we have never held that when the charges are sex related and alibi is the defense asserted that the trial court should dismiss the charges unless the state, in response to a request, can allege the precise date of the offenses. We particularly decline to go that far in this case because the state has specified that the offenses were committed on one of four possible days on two consecutive weekends. The fact that the defendant has proffered affidavits of three persons who support his alibi for three of the four days is of no benefit to the defendant at this stage of the proceedings. We decline to hold that as a matter of law affidavits submitted in support of an alibi defense are irrefutable and the charges against a person asserting such a defense under these circumstances must be dismissed. The defendant has proffered three affidavits in support of his alibi, one affidavit for each day of three of the four days specified by the state as being the possible date of the offenses. Since the state has not pinpointed the date that the offenses allegedly occurred the defendant claims that his alibi defense is prejudiced. There is no claim, nor is there any evidence that the state knows the precise date of the alleged offenses and is deliberately withholding it from the defendant. We recognize that "[t]he state has a duty to inform a defendant, within reasonable limits of the time when

the offense charged was alleged to have been commited. The state does not have a duty, however, to disclose information which the state does not have. Neither the sixth amendment to the United States constitution nor article first, § 8 of the Connecticut constitution requires that the state choose a particular moment as the time of an offense when the best information available to the state is imprecise. If [there was evidence that] the state had known to a reasonable certainty that the [sexual offenses were] committed within a narrower time frame than that provided in the bill of particulars, then the defendant's claim . . . would be more convincing." *State* v. *Stepney,* 191 Conn. 233, 242, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). We also recognize that because the state has been unable to be more precise the defendant's presentation of his alibi defense may be more burdensome and difficult. The burdens and difficulties, however, suffered by the defendant under these circumstances are not of the kind and magnitude to warrant dismissal of the charges.

Moreover, the dismissal of the substitute information is contrary to the law which governs at this stage of the case. "On a motion to dismiss an information, the proffered proof is to be viewed most favorably to the state." *State* v. *Morrill,* 193 Conn. 602, 611, 478 A.2d 994 (1984). It is undisputed that prior to the dismissal of the substitute information the trial judge had before him for consideration only the record pleadings (the substitute information and motions) and the three affidavits submitted by the defendant for consideration in support of his motion to dismiss. At this stage of the proceedings the affidavits were not evidence. The affidavits are not evidence any more than the substitute information and bill of particulars filed by the state alleging that the offenses occurred on one of four possible dates of two consecutive weekends. The trial judge

is obliged to evaluate the state's allegations in the substitute information and bill of particulars and the three affidavits submitted by the defendant in the light most favorable to the state. Id. Thus, the trial judge was required to assume that the state could prove the defendant guilty beyond a reasonable doubt of having committed the offenses on one of the four days specified in the substitute information despite the testimony, if any, of the defendant and the testimony of his witnesses in support of his alibi. Additionally, "[a]libi evidence, although commonly called a defense, is merely a rebuttal of the state's evidence. *State* v. *Bill,* 146 Conn. 693, 696–97, 155 A.2d 752 (1959). 'The burden is upon the accused in the first instance to produce evidence in support of the alibi. Whenever the defense is so far proved that upon the whole evidence a reasonable doubt as to the guilt of the defendant is caused, he is entitled to an acquittal.' Id., 697." *State* v. *Davis,* 192 Conn. 739, 745–46, 474 A.2d 776 (1984).The trial court erred in granting the defendant's motion to dismiss the substitute information.

## II

Finally, the defendant claims that the dismissal of the information is the functional equivalent of an acquittal, and that the state's appeal is barred by double jeopardy. While there is no comparable state constitutional provision to the double jeopardy provision of the fifth amendment to the United States constitution, we have nonetheless in large part "adopted the common-law rule against it as necessary to the due process guaranteed by [article first, § 8,] of our Constitution." *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962). Also, the double jeopardy provision of the fifth amendment has been made applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

To support his double jeopardy claim the defendant asserts that regardless of the label placed on the action of the trial court; *United States* v. *Scott,* supra, 97; in dismissing the substitute information after the jury was sworn, the judge implicitly made a factual finding that the state could not prove the date the offenses were committed, and under the *Horton* exception the date of the offense is material to his defense. *State* v. *Horton,* supra, 277. Thus, according to the defendant, the dismissal of the substitute information is functionally equivalent to an acquittal. This argument is attractive but not persuasive. The trial court in dismissing the substitute information specifically disclaimed making a factual determination of whether the defendant is guilty or innocent of the charges. We note that the dismissal was made not only over the exception of the state but at the persistent request of the defendant. We conclude, therefore, that the defendant has not presented any cognizable double jeopardy claim that would bar an appeal by the state to challenge the dismissal. "We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the [state] is permitted to appeal from such a ruling of the trial court in favor of the defendant." *United States* v. *Scott,* supra, 98–99. The *Scott* court in reviewing double jeopardy implications when a trial is aborted on the initiative of the judge as contrasted with a trial verdict reversed on an appeal stated that: " '[I]n the [second] situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his "valued right to

have his trial completed by a particular tribunal." ' " *United States* v. *Scott,* supra, 99–100, quoting *United States* v. *Jorn,* 400 U.S. 470, 484, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971). The *Scott* court concluded that: "We think the same reasoning applies *in pari passu* where the defendant, instead of obtaining a reversal of his conviction on appeal, obtains the termination of the proceedings against him in the trial court without any finding by a court or jury as to his guilt or innocence. He has not been 'deprived' of his valued right to go to the first jury; only the public has been deprived of its valued right to 'one complete opportunity to convict those who have violated its laws.' *Arizona* v. *Washington,* [434 U.S. 497, 509, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1975)]." *United States* v. *Scott,* supra, 100. Because the motion to dismiss was granted at the request of the defendant, and because no evidence has been presented to enable the trier to make any factual determination in this case, we conclude that the dismissal of the substitute information is not the functional equivalent of an acquittal, and the state's appeal is not barred by the legal restraints of the law pertaining to the defendant's double jeopardy rights.

There is error, the judgment is set aside and the case is remanded with direction to deny the motion to dismiss and for further proceedings according to law.

In this opinion HEALEY, CALLAHAN and HULL, Js., concurred.

COVELLO, J., dissenting. I respectfully disagree with the position adopted by the majority.

It is certainly true that an information is not ordinarily fatally flawed by its failure to set forth with absolute particularity the date and time of the offense alleged. See *State* v. *Stepney,* 191 Conn. 233, 242, 464 A.2d 758 (1983); cert. denied, 465 U.S. 1084, 104 S.

Ct. 1455, 79 L. Ed. 2d 772 (1984). This is especially so in cases involving youthful victims of sexual assaults who may be subconsciously repressing the details of such a traumatic incident or who by reason of their age do not think in terms of dates or time spans.

The fact remains, however, that an accused has a right to be informed of the nature and cause of the accusations against him and the absence of definite allegations may have constitutional implications. See *State v. Cates,* 202 Conn. 615, 625–26, 522 A.2d 788 (1987). Further, the rules of practice require that the state, upon motion by the defendant, shall disclose the *date,* time and place of the offense charged. See Practice Book § 832.

The majority resolves the uneasy tension between these competing social and legal interests by simply declaring that the state "does not have a duty . . . to disclose information which the state does not have." *State* v. *Stepney,* supra. Further, "the burdens and difficulties" created by this absence of information are assigned to the defendant without explanation.

I submit that a fairer resolution is achieved by balancing these competing interests on a case-by-case basis by considering the many relevant factors. Both New Jersey and New York have used such a procedure in similar cases. See *State in Interest of K.A.W.,* 104 N.J. 112, 515 A.2d 1217 (1986); *People* v. *Morris,* 61 N.Y.2d 290, 461 N.E.2d 1256, 473 N.Y.S. 2d 769 (1984).

Relevant factors in this analysis may include (1) the age, intelligence and possible infirmities of the victim; (2) whether the crime charged is a single incident offense; (3) the length of time between the alleged offense and the defendant's arrest; (4) compliance with the rules of practice; (5) whether there is an offer of an alibi defense; (6) the time frame within which the offense is ultimately claimed to have occurred; and (7) the adequacy of the investigatory process.

In the present case, the victim was fourteen years old at the time of the alleged assault. He was just three months short of his sixteenth birthday at the time of trial. The offense involved only a single incident and was alleged to have occurred in July, 1984. It was not reported until five months later. Although the original information is undated, it is fairly inferable that the prosecution commenced in early 1985, approximately six months after the alleged offense.

On April 24, 1985, the defendant filed a motion for a bill of particulars pursuant to Practice Book § 830 et seq. requesting the specific date and time of the offense. *The state did not comply with the motion until the commencement of trial on February 10, 1986.* The defendant then learned for the first time that the state contended that the offense occurred on either July 21, 22, 28 or 29, 1984.

On February 13, 1986, the state filed a motion for disclosure of the names of alibi witnesses pursuant to Practice Book § 763. In stark contrast to the state's nine and one-half months delay in answering the defendant's motion for a bill of particulars, the defendant responded the very next day with the names of these alibi witnesses, annexing sworn affidavits containing the content of their testimony. The affidavits placed the defendant elsewhere on three of the four days in issue.

The alleged victim here was a teenager, not a preschooler with an undeveloped sense of time. He had been in counseling for alcohol abuse and, for unknown reasons, failed to report the alleged offense for four and one-half months. The state, when asked for a bill of particulars, inexplicably and indefensibly sat on the request for nine and one-half months, thereby removing even further the victim's apparently limited

recollection from the time of the alleged offense. We can only speculate as to what he might have been able to remember if he had been promptly asked.

Having weighed all of these factors, the court below reached the correct result in dismissing the information. I would find no error.