## STATE OF CONNECTICUT *v.* JOAQUIN SANTIAGO (15442)

Borden, Berdon, Katz, Palmer and McDonald, Js.

Argued January 15—officially released February 25, 1997

*Vicki H. Hutchinson*, with whom was *Cynthia Hart-well-Russell*, for the appellant (defendant).

*Denise B. Smoker*, deputy assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *Kevin Black*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

BERDON, J. The two issues presented in this appeal are: (1) whether the trial court improperly denied the defendant's motion to dismiss in which he claimed that his criminal prosecution violated his constitutional right to not be placed in double jeopardy because he had already been administratively disciplined by prison officials; and (2) whether the trial court improperly allowed the jury to decide whether Garner Correctional Institution (Garner) was a "correctional institution" within the meaning of General Statutes § 53a-174a (a).[1] The

---

[1] General Statutes § 53a-174a (a) provides: "A person is guilty of possession of a weapon or dangerous instrument in a correctional institution when, being an inmate of such institution, he knowingly makes, conveys from

defendant, Joaquin Santiago, was convicted after a jury trial of one count of possession of a weapon or dangerous instrument in a correctional institution in violation of § 53a-174a (a). At the time of the incident in question, the defendant was incarcerated at Garner. Prior to his criminal trial, prison officials had imposed certain administrative sanctions against the defendant stemming from the same conduct for which he was subsequently prosecuted. After the jury returned its verdict of guilty, the trial court sentenced the defendant to fifteen years imprisonment to be served consecutively to the sentence he was already serving. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The following facts are relevant to this appeal. On March 22, 1995, while the defendant was incarcerated at Garner, a maximum security prison, correction officers conducted a surprise inspection of the defendant's cell in search of weapons or other contraband. As a result of the search, the officers found a homemade metal weapon, known as a metal shank, inside a pillow on the bed used by the defendant. The officers also found a second metal shank inside the mattress of the bed used by the defendant's cellmate. The defendant was immediately moved to Garner's restrictive housing unit. Administrative proceedings were instituted by prison officials against the defendant based upon his possession of a weapon in violation of prison regulations. The defendant admitted to the misconduct and received administrative sanctions, namely, ten days punitive segregation, thirty days loss of telephone and mail privi-

place to place or has in his possession or under his control any firearm, weapon, dangerous instrument, explosive, or any other substance or thing designed to kill, injure or disable."

leges, and the loss of forty-five days of credit that he had earned for good behavior in prison.

Thereafter, an arrest warrant was secured by the state police, and the defendant, on the basis of the same conduct for which he received administrative sanctions, was charged with one count of possession of a weapon or dangerous instrument in a correctional institution in violation of § 53a-174a (a). Subsequently, the defendant was charged in an information with two counts[2] of possession of a weapon or dangerous instrument in a correctional institution. The defendant pleaded not guilty and elected a jury trial. The jury returned a verdict of guilty on count one and not guilty on count two. This appeal followed.

The defendant first claims that the trial court improperly denied his motion to dismiss, the basis of which was that the criminal prosecution subsequent to the imposition of administrative sanctions violated the constitutional prohibition against placing him in double jeopardy.[3] After the jury verdict, the trial court denied

[2] The first count of the information charged the defendant with possession of a weapon or dangerous instrument approximately ten inches in length and the second count charged him with possession of another weapon or dangerous instrument, approximately seven inches in length, of the same type as the first. The second, smaller metal shank was the one found inside the mattress of the bed of the defendant's cellmate.

[3] The double jeopardy clause of the fifth amendment to the United States constitution provides in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The fifth amendment is made applicable to the states through the fourteenth amendment. See *Benton* v. *Maryland*, 395 U.S. 784, 787, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

The defendant also makes his claim of double jeopardy under article first, § 8, of the Connecticut constitution. "Connecticut does not have an express double jeopardy clause, but we have interpreted our due process guarantees as including protection against double jeopardy." *State* v. *Anderson*, 211 Conn. 18, 25 n.8, 557 A.2d 917 (1989). Because the defendant has failed to provide a separate analysis of his state constitutional claim, we decline to review it. See *State* v. *Faust*, 237 Conn. 454, 465 n.10, 678 A.2d 910 (1996); *State* v. *Wilkes*, 236 Conn. 176, 183 n.9, 671 A.2d 1296 (1996).

this motion. On appeal, the defendant renews his claim that he is being punished twice for the exact same offense. See *Brown* v. *Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977); see also *State* v. *John*, 210 Conn. 652, 693, 557 A.2d 93, cert. denied, 493 U.S. 824, 110 S. Ct. 84, 107 L. Ed. 2d 50 (1989) (citing *Brown* for proposition that double jeopardy clause of United States constitution "prohibits not only multiple trials for the same offense but also multiple punishments for the same offense"). We disagree.

This court, as well as numerous federal courts, has squarely held that administrative sanctions, like those meted out to the defendant in this case, serve the purpose of maintaining institutional order and security and do not give rise to a double jeopardy clause violation. See *State* v. *Mead*, 130 Conn. 106, 112, 32 A.2d 273 (1943) (solitary confinement imposed as administrative discipline and not as punishment for purposes of double jeopardy analysis); see also *United States* v. *Hernandez-Fundora*, 58 F.3d 802, 807 (2d Cir. 1995) (primary purpose of prison disciplinary proceedings is not to punish but to determine whether prison rules have been broken and to encourage good conduct and order in prison); *United States* v. *Newby*, 11 F.3d 1143, 1146 (3d Cir. 1993) ("[i]n considering what is necessary and proper to preserve institutional order and discipline, and to encourage good conduct, [the judiciary should] defer to the judgment of the prison authorities").

Nevertheless, "subsequent prosecutions will be barred . . . in those exceedingly rare circumstances where the disciplinary sanction imposed is grossly disproportionate to the government's interest in maintaining prison order and discipline." *United States* v. *Hernandez-Fundora*, supra, 58 F.3d 807. Upon review of the record, we find nothing so harsh about the administrative sanctions imposed against the defendant that would cause us to conclude that they were dispropor-

tionate to the state's legitimate interest in maintaining prison order and discipline. Our Appellate Court was recently confronted with the same type of administrative sanctions, and it aptly stated that "[t]he sanction of fifteen days of punitive segregation and thirty days of confinement to quarters was not disproportionate to the serious offense of assault on a correction employee. . . . Correction authorities must be allowed to take appropriate action to ensure the safety of inmates and correction employees; they must be permitted promptly to sanction misconduct within the institution so as to preserve order and discipline." *State* v. *Walker*, 35 Conn. App. 431, 436–37, 646 A.2d 209, cert. denied, 231 Conn. 916, 648 A.2d 159 (1994); see also *United States* v. *Halper*, 490 U.S. 435, 448–49, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989) ("[w]e . . . hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but *only* as a deterrent or retribution" [emphasis added]); *State* v. *Hickam*, 235 Conn. 614, 623, 668 A.2d 1321 (1995), cert. denied, U.S. , 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996) ("[W]e conclude that *Halper* stands for the proposition that a civil or administrative sanction that serves a legitimate remedial purpose and is related rationally to that purpose does not give rise to a double jeopardy violation even if the sanction has some deterrent effect. Conversely, no matter what its label, a sanction or portion thereof that seeks only to punish triggers the protection of the double jeopardy clause."). The sanctions imposed on the defendant were rationally related to the legitimate remedial purpose of allowing the prison officials to maintain order and discipline. Accordingly, we hold that the trial court properly denied the defendant's double jeopardy motion to dismiss.

The defendant's second claim is that the trial court improperly allowed the jury to decide whether Garner was a state correctional institution within the meaning of § 53a-174a (a).[4] After the state had presented its case, the defendant again moved for dismissal of the charges against him claiming that the institution in which he was confined was not a correctional institution as defined in General Statutes § 1-1 (w).[5] The court reserved decision on the motion, and instead instructed the jury that the state had to prove, as an element of the offense, that Garner was a correctional institution. The trial court did not instruct the jury regarding the list of state correctional institutions in § 1-1 (w). The defendant and the state both objected to the trial court's instruction on this matter. Following the jury verdict of guilty, the trial court denied the defendant's motion to dismiss based on the defendant's argument regarding Garner's status.

The defendant argues that the trial court, as a matter of law, was required to dismiss the charges against him

[4] See footnote 1.

[5] General Statutes § 1-1 (w) provides: " 'Correctional institutions' means the Connecticut Correctional Institution, Somers; the Connecticut Correctional Institution, Enfield-Medium; the Carl Robinson Correctional Institution, Enfield; the Connecticut Correctional Institution, Niantic; the John R. Manson Youth Institution, Cheshire; the Connecticut Correctional Center, Cheshire; the Northeast Correctional Center, Mansfield; the Community Correctional Centers at Bridgeport, Brooklyn, Haddam, Hartford, Litchfield, New Haven and Montville; the Eddy/DWI Correctional Unit, Middletown; the Hartell/DWI Correctional Unit, Windsor Locks; the J.B. Gates Correctional Unit, Niantic; the Jennings Road Detention Center, Hartford; the Morgan Street Detention Center, Hartford; the Union Avenue Detention Center, New Haven; the Western Substance Abuse Treatment Unit, Newtown. . . ."

Section 1-1 (w) was amended in 1990, two years before Garner was placed into operation, by No. 90-24 of the 1990 Public Acts (P.A. 90-24), which deleted a reference to one previously named institution and added seven new ones Also, other prisons currently in existence are not mentioned in the current definition of correctional institution in § 1-1 (w) because they too became operational after the enactment of P.A. 90-24, the last amendment that added new institutions to that statute.

because Garner was not included as a state correctional institution within the statutory definition of § 1-1 (w). Although the defendant is correct that § 1-1 (w) does not list Garner as a correctional institution, § 53a-174a does not purport to incorporate by reference the list of correctional institutions listed in § 1-1 (w). Compare General Statutes § 53a-168.[6] In *State* v. *Faust*, 237 Conn. 454, 469–71, 678 A.2d 910 (1996), a case involving a conviction for rioting at a correctional institution in violation of General Statutes § 53a-179b,[7] we reviewed a claim that the trial judge had removed a necessary element of the offense, that the state had the burden of proving, from the jury's consideration by instructing the jury, as a matter of law, that Garner was a correctional institution. Although we assumed, without deciding, that the instruction in *Faust* was improper, we were nonetheless persuaded that the state had satisfied its burden of proving that the trial court's instruction was harmless beyond a reasonable doubt because there was overwhelming and uncontradicted evidence adduced at trial establishing that Garner was a correctional institution. Id., 470. We believe that it was clear in *Faust* that the proper course of action was for the jury to have been allowed to consider, as an element of the offense, whether the alleged rioting occurred at a correctional institution. In the present case, the trial court did adequately instruct the jury that it had to find, as an element of the offense, that Garner was a

[6] General Statutes § 53a-168 provides in pertinent part: "Escape: Definitions. For purposes of sections 53a-169 to 53a-171, inclusive:

"(1) 'Correctional institution' *means the facilities defined in section 1-1 and any other correctional facility established by the commissioner of correction. . . .*" (Emphasis added.)

[7] General Statutes § 53a-179b provides in pertinent part: "Rioting at correctional institution: Class B felony. (a) A person is guilty of rioting at a correctional institution when he incites, instigates, organizes, connives at, causes, aids, abets, assists or takes part in any disorder, disturbance, strike, riot or other organized disobedience to the rules and regulations of such institution. . . ."

correctional institution. In its instructions, the trial court reminded the jury of the evidence regarding the layout and description of the facility, as well as the testimony of correction officers and inmates. The jury could reasonably have found that Garner was a correctional institution based on that testimony. The trial court, therefore, properly denied the defendant's motion to dismiss and allowed the jury to decide whether Garner was a correctional institution as a necessary element of the offense under § 53a-174a.

The judgment is affirmed.

In this opinion the other justices concurred.