## STATE OF CONNECTICUT *v.* JARRELL CRAWFORD
### (SC 16407)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

770

Argued May 29—officially released August 28, 2001

*Richard W. Callahan,* special public defender, for the appellant (defendant).

*Lisa A. Riggione,* senior assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *James Bernardi,* senior assistant state's attorney, for the appellee (state).

*Opinion*

BORDEN, J. The dispositive issue of this appeal[1] is whether the defendant, Jarrell Crawford, has presented

---

[1] The defendant appealed from the ruling of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

a colorable claim of double jeopardy so as to permit him to pursue this interlocutory appeal from the trial court's denial of his motion to dismiss the charge of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[2] The defendant claims that, because he already had entered a plea of guilty to, and had been found guilty of, the crime of assault in the first degree in connection with the beating that led to the death of the victim, Mathew Kosbob, the state is prohibited from seeking multiple punishments for the same offense under the double jeopardy clause. We dismiss the appeal because the claims presented by the defendant do not present colorable claims of double jeopardy that support this interlocutory appeal.

In 1997, the defendant was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (4), kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), and conspiracy to commit assault in the first degree and kidnapping in the first degree in violation of General Statutes §§ 53a-48 (a), 53a-59 (a) and 53a-92 (a). The defendant pleaded guilty to the charged offenses. The sentencing court, *Dean, J.,* sentenced the defendant to a total effective sentence on all convictions of twenty-

---

[2] General Statutes § 53a-55 provides: "(a) A person is guilty of manslaughter in the first degree when: (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or (2) with intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he committed the proscribed act or acts under the influence of extreme emotional disturbance, as provided in subsection (a) of section 53a-54a, except that the fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subsection; or (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person.

"(b) Manslaughter in the first degree is a class B felony."

five years imprisonment, execution suspended after eleven years, followed by five years probation.

Subsequently, following the death of the victim in November, 1998, the state filed this information charging the defendant with manslaughter in the first degree in violation of § 53a-55 (a) (1). The defendant moved to dismiss this second prosecution on the grounds that it violated the principles of double jeopardy and due process under the federal and state constitutions. The trial court, *Nigro, J.*, denied the defendant's motion to dismiss. This interlocutory appeal followed.

The following facts and procedural history, as set forth by the trial court, are relevant to this appeal. "[The defendant], together with [three] others, had been arrested on July 29, 1995, because of an assault on the victim . . . . The assault occurred in the evening hours of July 28, 1995. Among other injuries resulting from the assault, the victim sustained a severe craniocerebral trauma and, shortly after the assault, lapsed into a coma of several months duration. He slowly regained some consciousness in mid-December of 1995, but remained hospitalized in a 'vegetative' state. He was fed intravenously and breathed with the assistance of a respirator through a tracheal tube. He lingered as a patient in a rehabilitative hospital in this condition until his death on November 23, 1998. The autopsy listed the cause of death as 'delayed medical complications of craniocerebral trauma' and the manner of death as [a] 'homicide.'

"In March, 1997, while the victim was still hospitalized, the state filed [an] amended [information] against [the defendant] charging the crimes of (1) assault in the first degree while aided by two or more persons actually present and by means of a dangerous instrument; (2) kidnapping in the first degree; and (3) conspiracy to commit assault in the first degree and kidnapping in the first degree. . . .

"On May 15, 1997, the defendant . . . entered a plea of guilty to each of the three counts. On August 5, 1997, [the defendant] was sentenced on the kidnapping in the first degree count to incarceration for twenty-five years, execution suspended after eleven years, and probation on the unexecuted portion for five years. On the counts of assault in the first degree and conspiracy to commit assault in the first degree, the defendant was sentenced to eleven years on each count to run concurrently with the kidnapping count, to a total effective sentence of twenty-five years, suspended after eleven years, and probation [on] the unexecuted portion of the sentence for five years." At both the May 15, 1997 and August 5, 1997 hearings, the state explicitly reserved its right to bring appropriate homicide charges in the event that the victim died.

The trial court also stated: "After the death of the victim . . . the state secured the issuance of [an] arrest [warrant] charging [the defendant] with the crime of manslaughter in the first degree. It is the information filed on the basis of [this warrant], alleging that with intent to cause serious physical injury to [the victim], he caused the death of [the victim], that [the defendant] seeks to have dismissed." The trial court determined that the subsequent prosecution for manslaughter did not violate the defendant's constitutional protection against double jeopardy or violate his due process rights.[3]

The defendant claims that the state cannot now seek to impose additional punishment for the death of the victim because he already has been sentenced for his

---

[3] We note that the defendant's due process claim, namely, that he entered into a plea bargain when he pleaded guilty to the charges of assault in the first degree, kidnapping in the first degree, conspiracy to commit assault in the first degree, and conspiracy to commit kidnapping in the first degree, in the expectation that he would not be prosecuted on any additional charges if the victim later died, is not before this court in this interlocutory appeal.

participation in the beating that led to the victim's death. According to the defendant, the imposition of additional punishment in connection with that beating would violate the multiple punishments prong of the double jeopardy clause. We conclude that the defendant has misconstrued our double jeopardy jurisprudence, and in doing so, has failed to proffer a colorable double jeopardy claim that supports an interlocutory appeal. Thus, this court lacks subject matter jurisdiction to consider this interlocutory appeal under our final judgment jurisprudence. Accordingly, we dismiss the appeal.

The double jeopardy clause of the fifth amendment to the United States constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. See *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). "Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of article first, § 9, include protection against double jeopardy. *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962)." *State* v. *Chicano,* 216 Conn. 699, 706, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); see also *State* v. *Nixon,* 231 Conn. 545, 550, 651 A.2d 1264 (1995) (right to protection against double jeopardy is implicit in due process guarantees of state constitution).

It is axiomatic that appellate jurisdiction is limited to final judgments of the trial court. See, e.g., *Waterbury Teachers Assn.* v. *Freedom of Information Commission,* 230 Conn. 441, 447–48, 645 A.2d 978 (1994); see

also General Statutes § 52-263.[4] As we have stated, however, "[t]here is a small class of cases that meets the test of being effectively unreviewable on appeal from a final judgment and therefore, is subject to interlocutory review. The paradigmatic case in this group involves the right against double jeopardy. *State* v. *Moeller*, 178 Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979). *Because jeopardy attaches at the commencement of trial, to be vindicated at all, a colorable double jeopardy claim must be addressed by way of interlocutory review. The right not to be tried necessarily falls into the category of rights that can be enjoyed only if vindicated prior to trial, and, consequently, falls within the second prong of State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983) (otherwise interlocutory order appealable in two circumstances: [1] where order or action terminates a separate and distinct proceeding, or [2] where order or action so concludes rights of the parties that further proceedings cannot affect them). See *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000) (because criminal defendant's constitutional double jeopardy right includes right not even to be tried for same offense, denial of motion to dismiss criminal charges, filed on basis of colorable claim of double jeopardy, is immediately appealable final judgment under second prong of *Curcio*).

"We have entertained several interlocutory appeals from denials of motions to dismiss based on double

[4] General Statutes § 52-263 provides: "Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

jeopardy claims. See *In re Juvenile Appeal (85-AB)*, 195 Conn. 303, 305–309, 488 A.2d 778 (1985); *State* v. *Aillon*, 189 Conn. 416, 425, 456 A.2d 279, cert. denied, 464 U.S. 837, 104 S. Ct. 124, 78 L. Ed. 2d 122 (1983); *State* v. *Seravalli*, 189 Conn. 201, 206 n.6, 455 A.2d 852, cert. dismissed, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983). That constitutional right not only protects against being twice punished but also is a guarantee against being twice put to trial for the same offense. *Abney* v. *United States*, 431 U.S. 651, 661, 97 S. Ct. 2034, 52 L. Ed. 2d 651 (1977). The only real question is whether the double jeopardy claim is colorable." (Emphasis added; internal quotation marks omitted.) *State* v. *Tate*, 256 Conn. 262, 275–76, 773 A.2d 308 (2001). "For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he *might* prevail." (Emphasis in original.) Id., 276–77.

In the present appeal, the defendant's claim that the state cannot now seek additional punishment by bringing manslaughter charges because to do so would violate the multiple punishments prong of the double jeopardy clause does not satisfy this minimal standard. As we have stated: "The constitutional guarantee against double jeopardy serves three separate functions: (1) It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]. *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) [overruled on other grounds, *Alabama* v. *Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989)]." (Internal quotation marks omitted.) *State* v. *Hill*, 237 Conn. 81, 99, 675 A.2d 866 (1996). The first two prongs, or functions, may be regarded as constituting the "successive prosecution" part of the double

jeopardy protection. The third prong, which is analytically different from the first two, involves multiple punishments for the same offense in a single prosecution.

The rationale for the rule permitting a criminal defendant to file an interlocutory appeal from the denial of a motion to dismiss on double jeopardy grounds is based on the first two prongs of the double jeopardy protection—protections against successive prosecution for the same offense, namely, (1) a subsequent prosecution after a prior acquittal, and (2) a subsequent prosecution after a prior conviction. The rationale is that those two prongs prevent a defendant even from having to go through a second trial. "[T]he [s]tate with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." (Internal quotation marks omitted.) *State* v. *Boyd*, 221 Conn. 685, 698, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992). Thus, in order to give meaning to the successive prosecution part of the protection against double jeopardy, we permit a defendant to file an interlocutory appeal from the denial of a motion to dismiss so long as that motion presents a colorable double jeopardy claim.

Indeed, our cases involving such interlocutory appeals are all cases in which the defendant had made a colorable *successive prosecution* double jeopardy claim.[5] On occasion, however, this court has entertained

---

[5] See *State* v. *Kruelski*, 250 Conn. 1, 737 A.2d 377 (1999), cert. denied, 528 U.S. 1168, 120 S. Ct. 1190, 145 L. Ed. 2d 1095 (2000) (successive prosecution for violating Home Improvement Act after acquittal); *State* v. *James*, 247 Conn. 662, 725 A.2d 316 (1999) (successive prosecution on felony murder charges after conviction on predicate robbery charge); *State* v. *Ledbetter*, 240 Conn. 317, 692 A.2d 713 (1997) (successive prosecution on part B information after defendant convicted on part A information and acquitted on part B

interlocutory appeals that have not fallen within the

information); *State* v. *Boyd*, supra, 221 Conn. 685 (successive prosecution on felony murder charges after conviction on predicate burglary offense); *State* v. *Lonergan*, 213 Conn. 74, 566 A.2d 677 (1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990) (successive prosecution on driving under influence charge after acquittal on manslaughter charge); *State* v. *Evans*, 205 Conn. 528, 534 A.2d 1159 (1987), cert. denied, 485 U.S. 988, 108 S. Ct. 1292, 99 L. Ed. 2d 502 (1988) (successive prosecution on sexual assault charges after trial court granted defendant's motion to dismiss before presentation of evidence); *State* v. *McKenna*, 188 Conn. 671, 453 A.2d 435 (1982) (successive state prosecution after conviction on federal charges); *State* v. *Moeller*, supra, 178 Conn. 67 (successive state prosecution after acquittal on federal charges); *State* v. *Flower*, 176 Conn. 224, 405 A.2d 655 (1978) (successive prosecution after defendant found not guilty by reason of insanity); *State* v. *Jones*, 166 Conn. 620, 353 A.2d 764 (1974) (successive prosecution for selling heroine after conviction); see also *Shay* v. *Rossi*, supra, 253 Conn. 134 (denial of motion to dismiss on basis of colorable sovereign immunity claim is immediately appealable); *State* v. *Colton*, 234 Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996) (successive prosecution on murder charges after prosecutorial misconduct); *State* v. *Price*, 208 Conn. 387, 544 A.2d 184 (1988) (successive prosecution after first jury discharged); *State* v. *Curcio*, supra, 191 Conn. 27 (successive grand jury investigation after first grand jury returned no true bill); *State* v. *Roy*, 182 Conn. 382, 438 A.2d 128 (1980) (successive prosecution after jury substitution before presentation of evidence).

We also have entertained interlocutory appeals following a mistrial based on manifest necessity; see *State* v. *Tate*, supra, 256 Conn. 262 (motion to dismiss information after mistrial); *State* v. *Kasprzyk*, 255 Conn. 186, 763 A.2d 655 (2001) (same); *State* v. *Buell*, 221 Conn. 407, 605 A.2d 539, cert. denied, 506 U.S. 904, 113 S. Ct. 297, 121 L. Ed. 2d 221 (1992) (same); *State* v. *Autorino*, 207 Conn. 403, 541 A.2d 110, cert. denied, 488 U.S. 855, 109 S. Ct. 144, 102 L. Ed. 2d 116 (1988) (same); *State* v. *Van Sant*, 198 Conn. 369, 503 A.2d 557 (1986) (same); *State* v. *Aillon*, supra, 189 Conn. 416 (motion for acquittal after mistrial); *State* v. *Seravalli*, supra, 189 Conn. 201 (same); as well as appeals based on double jeopardy collateral estoppel. See *State* v. *McDowell*, 242 Conn. 648, 699 A.2d 987 (1997) (prosecution on criminal charges after probation revocation hearing); *State* v. *Aparo*, 223 Conn. 384, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 122 L. Ed. 2d 785 (1993) (prosecution on conspiracy to commit murder charge after acquittal on murder as accessory charge and mistrial on conspiracy to commit murder charge); *State* v. *Hope*, 215 Conn. 570, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991) (prosecution on aiding and abetting murder charge after acquittal on conspiracy to commit felony murder and murder charges). These two groups of cases are merely a variant of our successive prosecution jurisprudence, because by

successive prosecution rubric. These cases have involved administrative proceedings followed by criminal charges, in which the defendants based their double jeopardy claims on a multiple punishments, rather than a successive prosecutions, argument.[6] Although we may have analyzed these cases under the third, or multiple punishments, prong of our double jeopardy jurisprudence, what these defendants essentially sought was immunity *even from being tried* on the criminal charges, which is consistent with the rationale for permitting interlocutory appeals in the successive prosecution context.[7] To the extent, however, that these cases suggest that a double jeopardy claim of *multiple punishment,* rather than successive prosecution, may be appealed interlocutorily, they are overruled because a

---

entertaining interlocutory appeals based on these claims, the court can, if the defendant's double jeopardy claim has merit, prevent a defendant even from having to go through a second trial.

[6] See *State* v. *Tuchman,* 242 Conn. 345, 699 A.2d 952 (1997), cert. dismissed, 522 U.S. 1101, 118 S. Ct. 907, 139 L. Ed. 2d 922 (1998) (prosecution on larceny charge after sanctions imposed in administrative proceeding before department of social services); *State* v. *Santiago,* 240 Conn. 97, 689 A.2d 1108 (1997) (prosecution on weapons charge after administrative discipline by prison officials); *State* v. *Hickam,* 235 Conn. 614, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996) (prosecution for driving while under influence after suspension of driver's license in administrative proceeding); *State* v. *Fritz,* 204 Conn. 156, 527 A.2d 1157 (1987) (prosecution for illegally prescribing narcotic substance after administrative proceeding before department of consumer protection).

[7] Indeed, the multiple punishments prong of the double jeopardy protection is inconsistent with the rationale for permitting an interlocutory appeal from the denial of a motion to dismiss on successive prosecution grounds because the multiple punishments prong is applicable only in the context of a single trial. See *Jones* v. *Thomas,* 491 U.S. 376, 381, 109 S. Ct. 2522, 105 L. Ed. 2d 322 (1989) ("respondent's initial conviction and sentence for both felony murder and the underlying felony violated the third aspect of the [d]ouble [j]eopardy [c]lause, the protection against multiple punishments for the same offense imposed in a single proceeding" [internal quotation marks omitted]); *State* v. *Greco,* 216 Conn. 282, 290, 579 A.2d 84 (1990) (double jeopardy clause "prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial").

multiple punishment claim is simply inconsistent with the rationale for such an interlocutory appeal.

In the present case, the defendant's double jeopardy claim is not of the successive prosecution type. It is a claim based on the multiple punishments prong of our double jeopardy jurisprudence. The defendant does not claim that he may not be forced to undergo a trial for the current charges; he claims only that he may not be punished for those charges. Indeed, in his brief and at oral argument before this court, the defendant specifically conceded that he may be tried on the manslaughter charge. Thus, his claim simply does not fall within the rationale for permitting an interlocutory appeal, and he must await a final judgment of conviction.

The defendant also claims that his guilty plea and conviction on the charge of assault in the first degree, in which the sentencing court considered the likelihood that the victim would die because of the severity of the beating, collaterally estops the state from seeking additional punishment based on the fact that the victim subsequently died. This claim involves the collateral estoppel branch of double jeopardy jurisprudence; see *Ashe* v. *Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970) (fifth amendment guarantee against double jeopardy embodies collateral estoppel as constitutional requirement); which, unlike his other claims, does involve the successive prosecution aspect of double jeopardy. We conclude, nonetheless, that his claim does not present a colorable double jeopardy claim and, therefore, does not support this interlocutory appeal.

"Collateral estoppel is given constitutional dimensions by the double jeopardy clause. *State* v. *Aparo*, [223 Conn. 384, 388, 614 A.2d 401 (1992), cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 122 L. Ed. 2d 785 (1993)]. In a criminal case, collateral estoppel is a protection

included in the fifth amendment guarantee against double jeopardy. *State* v. *Hope*, 215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991)." (Internal quotation marks omitted.) *State* v. *James*, 247 Conn. 662, 675, 725 A.2d 316 (1999). Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe* v. *Swenson*, supra, 397 U.S. 443. "To establish whether collateral estoppel applies, the court must determine *what facts were necessarily determined in the first trial*, and must then assess whether the government is attempting to relitigate those facts in the second proceeding. . . . A defendant who seeks to protect himself from being retried pursuant to the principles of collateral estoppel carries the burden of establishing that the issue he seeks to foreclose from consideration in the second case was necessarily *resolved in his favor* in the prior proceeding." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *James*, supra, 675.

The very foundation of a colorable double jeopardy collateral estoppel claim is that the defendant was *tried and acquitted* on the issue that he now seeks to prevent the state from relitigating. The defendant cannot meet this standard because there was no prior trial, only a guilty plea, and there was no acquittal, only a conviction. The defendant, therefore, has failed to proffer a colorable collateral estoppel claim under our double jeopardy jurisprudence.

The appeal is dismissed.

In this opinion the other justices concurred.