## STATE OF CONNECTICUT *v.* JAMES DUKE
### (AC 17541)

Foti, Hennessy and Sullivan, Js.

Argued January 28—officially released February 17, 1998*

\* February 17, 1998, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Peter B. Prestley*, with whom was *Louis W. Flynn, Jr.*, for the appellant (defendant).

*Toni M. Smith-Rosario*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Mary Rose Flaherty*, assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, James Duke, appeals from the denial of his motion to dismiss the charges[1] of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71.[2] In his motion, the defendant argued that his continued prosecution would violate his rights, under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut, not to be placed twice in jeopardy for the same offense.

The criminal charges are based on allegations that on ·or about May 1 and May 2, 1996, the defendant, a licensed respiratory therapist at the Hospital for Special Care in New Britain, sexually assaulted a patient suffering from amyotrophic lateral sclerosis, a progressive and debilitating disease that attacks the central nervous system.[3] Following the defendant's arrest, the department of public health (department) began an administrative review pursuant to General Statutes § 20-162p.[4]

---

[1] The defendant's motion was brought pursuant to Practice Book § 815 (6) and (9). The trial court's denial of the motion is an appealable final judgment. See *State* v. *Moeller*, 178 Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 (1979).

[2] On November 21, 1997, we granted the state's motion to expedite the appeal.

[3] The alleged victim is a fifty-five year old woman who is afflicted with what is commonly known as Lou Gehrig's disease. At the time of the alleged assaults, she was paralyzed from the neck down, unable to move her body, to breathe independently or to speak. She communicated by blinking her eyes to indicate yes and turning her head left to right to indicate no.

[4] General Statutes § 20-162p provides in relevant part: "The commissioner may take any action set forth in section 19a-17 if the license holder fails

On October 13, 1996, the defendant was notified that the department planned to commence formal disciplinary proceedings pursuant to General Statutes § 19a-14.[5] On January 31, 1997, the defendant entered into a consent order with the department's bureau of regulatory services. Pursuant to the consent order, the defendant was (1) placed on probation for a period of four years, (2) required to undergo a psychiatric evaluation at his own expense and (3) required to pay a civil penalty of $1000. The conditions of the defendant's probation specify that the defendant may not provide care to any patient who has restricted sensory perception, moderate to severe cognitive impairments or who is unable to communicate either verbally, in writing, by sign, computer or letter board modality, except in the presence of another licensed practitioner.

On February 14, 1997, the defendant filed a motion to dismiss the criminal charges, claiming that the conditions to which he had agreed under the consent order

to conform to the accepted standards of the respiratory care profession, including, but not limited to, the following: Conviction of a felony . . . illegal conduct; negligent, incompetent or wrongful conduct in professional activities . . . . Notice of any contemplated action under said section, of the cause therefor and the date of hearing thereon shall be given and an opportunity for hearing afforded as provided in regulations adopted by the commissioner."

[5] General Statutes § 19a-14 (a) provides in relevant part: "The Department of Public Health shall have the following powers and duties with regard to the boards and commissions listed in subsection (b) which are within the Department of Public Health. The department shall . . .

"(10) Conduct any necessary review, inspection or investigation regarding . . . possible violations of statutes or regulations, and disciplinary matters. In connection with any investigation, the Commissioner of Public Health or said commissioner's authorized agent may administer oaths, issue subpoenas, compel testimony and order the production of books, records and documents. If any person refuses to appear, to testify or to produce any book, record or document when so ordered, a judge of the Superior Court may make such order as may be appropriate to aid in the enforcement of this section;

"(11) Conduct any necessary investigation and follow-up in connection with complaints regarding persons subject to regulation or licensing by the department . . . ."

constituted "punishment" for his alleged conduct and, therefore, he could not be prosecuted on the basis of the same conduct. In its memorandum of decision, the trial court held that the administrative sanctions imposed under the consent order served a legitimate remedial purpose and were rationally related to that purpose. The trial court also concluded that the fine imposed, which was far below the maximum fine that could have been imposed, was primarily compensatory and remedial, rather than punitive. In denying the defendant's motion, the trial court held that because the administrative sanctions imposed served compensatory and remedial purposes and were not intended to punish the defendant, the continued criminal prosecution would not violate his double jeopardy protections. We agree that the continued criminal prosecution and punishment of the defendant would not violate the double jeopardy protections of the United States and Connecticut constitutions.

I

The defendant claims that his constitutional rights under the fifth[6] and fourteenth[7] amendments to the United States constitution would be violated if the state is allowed to prosecute him criminally. The defendant's claim is predicated on the constitutional protection against multiple punishments for the same offense. *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). "Because the issue of whether an administrative sanction constitutes punishment for purposes of double jeopardy is a question of law, [our] review [is] de novo." *State* v. *Tuchman*, 242 Conn. 345, 350–51, 699 A.2d 952 (1997).

---

[6] The fifth amendment to the United States constitution provides in relevant part: "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

[7] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

It is well settled that Congress may impose both a criminal and a civil sanction with respect to the same act or omission. Whether a civil sanction may preclude a subsequent criminal prosecution depends on whether it was intended to be, or by its nature necessarily was, punitive or remedial. *United States* v. *One Assortment of 89 Firearms*, 465 U.S. 354, 362, 104 S. Ct. 1099, 79 L. Ed. 2d 361 (1984). Among the factors that are indicative of whether a sanction is punitive or remedial in nature are whether (1) it involves an affirmative disability or restraint, (2) it has historically been regarded as a punishment, (3) it comes into play only on a finding of scienter, (4) its operation will promote the traditional aims of punishment, i.e., retribution and deterrence, (5) the behavior to which it applies is already a crime, (6) an alternative purpose to which it may rationally be connected is assignable for it, and (7) it appears excessive in relation to the alternative purpose assigned. *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). If the indication is that Congress intended the sanction to be remedial, then further inquiry is made to determine whether "the clearest proof" has been shown that the statutory scheme is so punitive as to negate that intention. *United States* v. *One Assortment of 89 Firearms*, supra, 365; *United States* v. *Ward*, 448 U.S. 242, 249, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980).

In 1989, the United States Supreme Court held that the imposition of a civil penalty following a criminal prosecution constitutes multiple punishment for the same offense if the civil penalty "bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word . . . ." *United States* v. *Halper*, 490 U.S. 435, 449, 109 S. Ct. 1892, 104 L. Ed. 2d 487 (1989).[8] The court subsequently rejected any

---

[8] In *United States* v. *Halper*, supra, 490 U.S. 452, the sanction of over $130,000 was determined to be punitive rather than compensatory because

notion that *Halper* stands for the proposition that a civil sanction must be deemed to be punitive unless it is "solely remedial." *United States* v. *Ursery*, 518 U.S. 267, 284–85 n.2, 116 S. Ct. 2135, 135 L. Ed. 2d 549 (1996).[9]

On December 10, 1997, the court issued its decision in *Hudson* v. *United States*, 522 U.S. 93, 118 S. Ct. 488, 138 L. Ed. 2d 549 (1997), in which it stated: "Our opinion in *United States* v. *Halper* [supra, 490 U.S. 435] marked the first time we applied the Double Jeopardy Clause to a sanction without first determining that it was criminal in nature. . . . The analysis applied by the *Halper* Court deviated from our traditional double jeopardy doctrine in two key respects. First, the *Halper* Court bypassed the threshold question: whether the successive punishment at issue is a 'criminal' punishment. . . . The second significant departure in *Halper* was the Court's decision to 'asses[s] the character of the actual sanctions imposed' . . . rather than, as *Kennedy* [v. *Mendoza-Martinez*, supra, 372 U.S. 144] demanded, evaluating the 'statute on its face' to determine whether it provided for what amounted to a criminal sanction . . . .

"We believe that *Halper's* deviation from longstanding double jeopardy principles was ill considered. As subsequent cases have demonstrated, *Halper's* test for determining whether a particular sanction is 'punitive,'

it was "sufficiently disproportionate" to the loss sustained by the government. The matter, however, was remanded to the District Court to provide the government an opportunity to demonstrate that the District Court's initial assessment of its injuries was erroneous. Id.

[9] Our Supreme Court has also declined to adopt the "solely remedial" standard; *State* v. *Tuchman*, supra, 242 Conn. 361–62; and has utilized a two-pronged approach for determining whether an administrative action constitutes punishment for purposes of double jeopardy. See *State* v. *Hickam*, 235 Conn. 614, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996). "Under that approach . . . [the court must] assess: (1) the purpose the sanction is designed to serve; and (2) the nature of the particular sanction as applied to the defendant." *State* v. *Tuchman*, supra, 352.

and thus subject to the strictures of the Double Jeopardy Clause, has proved unworkable. We have since recognized that all civil penalties have some deterrent effect. . . . If a sanction must be 'solely' remedial (i.e., entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." (Citations omitted.) Id., 100–102.

Applying traditional federal double jeopardy principles to the facts of the present case, we hold that the criminal prosecution of the defendant would not violate double jeopardy. It is evident that our legislature intended the administrative sanctions imposed on the defendant to be civil in nature. Furthermore, the sanctions serve a legitimate remedial purpose. The terms and conditions of the defendant's probation restrict his actions so as to protect other patients in situations similar to that of the alleged victim. In addition, the maximum fine that could have been imposed on the defendant is $10,000.[10] The defendant, however, was fined $1000 and, while the consent order does not specifically state the basis for that amount, the legislative history of General Statutes § 19a-17 shows that subsection (a) (6), which permits the imposition of a fine, was intended to provide the department with flexibility in disciplining professional misconduct and that fines should be commensurate with the seriousness of the misconduct. Finally, because our legislature conferred the power to sanction on an administrative agency, we consider it prima facie evidence that the sanctions were intended to be civil rather than criminal in nature. See

---

[10] General Statutes § 19a-17 (a) provides in relevant part: "Each board or commission established under chapters 369 to 376, inclusive, 378 to 381, inclusive, and 383 to 388, inclusive, and the Department of Public Health with respect to professions under its jurisdiction which have no board or commission may take any of the following actions, singly or in combination, based on conduct which occurred prior or subsequent to the issuance of a permit or a license upon finding the existence of good cause . . .

"(6) Assess a civil penalty of up to ten thousand dollars . . . ."

*Helvering* v. *Mitchell*, 303 U.S. 391, 402, 58 S. Ct. 630, 82 L. Ed. 917 (1938).

Turning to the second stage of the test as reestablished by *Hudson* v. *United States*, supra, 522 U.S. 93, we find that there is little, if any, evidence, let alone the required "clearest proof," that the civil sanctions imposed on the defendant are so punitive in form and effect as to render them criminal despite our legislature's clear intent to the contrary. We note that the types of sanctions imposed in this case have not historically been viewed as punishment. In fact, the payment of money is a sanction that has "been recognized as enforceable by civil [rather than criminal] proceedings since the original revenue law of 1789." *Helvering* v. *Mitchell*, supra, 303 U.S. 400.

We conclude, therefore, that under the fifth and fourteenth amendments to the United States constitution, the civil sanctions imposed on the defendant were intended by our legislature to be civil in nature and that no evidence exists, let alone the clearest proof, that they are so punitive in form and effect as to render them criminal despite the legislative intent to the contrary.

## II

The defendant also contends that his continued prosecution and punishment would violate the double jeopardy protection implied under article first, §§ 8[11] and 9,[12] of the constitution of Connecticut.[13]

The defendant contends that the double jeopardy protection provided by the Connecticut constitution

---

[11] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law . . . ."

[12] Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law." The defendant refers to article first, § 9, in his reply and supplemental briefs. Neither his motion to dismiss nor his original brief addressed § 9.

[13] We note that the parties were given permission to file supplemental briefs addressing this issue.

exceeds that provided by the United States constitution as interpreted in *Hudson* v. *United States*, supra, 522 U.S. 93. The defendant recognizes that in *State* v. *Tuchman*, supra, 242 Conn. 360, our Supreme Court stated that "the absence of an explicit constitutional double jeopardy provision strongly suggests that the incorporated common law double jeopardy protection mirrors, rather than exceeds, the federal constitutional protection." The defendant argues, however, that *Tuchman* was addressing the state of affairs subsequent to *United States* v. *Halper*, supra, 490 U.S. 435, and *State* v. *Hickam*, 235 Conn. 614, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996), "and hence is not indicative as to whether Connecticut may in the future substantially reverse itself and adopt the *Hudson* approach."

We do not agree with the defendant that the United States Supreme Court's decision in *Hudson* in any manner affects our Supreme Court's analysis and conclusion in *Tuchman* as to the double jeopardy protection afforded by our state constitution. In *State* v. *Tuchman*, supra, 242 Conn. 360–62, the absence of an explicit constitutional double jeopardy provision in our state constitution was merely one of six factors[14] relied on by our Supreme Court in rejecting the defendant's claim that our state constitution provides more expansive double jeopardy protection than does the federal constitution. While *Tuchman* set forth the law that "[s]anctions that are not exclusively remedial do not necessarily constitute punishment for state constitutional double jeopardy purposes"; id., 362; the language

[14] Our Supreme Court stated that "[w]hen determining whether our state constitution affords Connecticut citizens greater individual liberties than does its federal counterpart, we consider, to the extent applicable, six factors: (1) the text of relevant constitutional provisions; (2) historical insights into the intent of our constitutional forebears; (3) related Connecticut precedents; (4) persuasive federal precedents; (5) persuasive precedents of other state courts; and (6) contemporary understandings of applicable economic and sociological norms." *State* v. *Tuchman*, supra, 242 Conn. 360.

therein makes it clear that our state constitution does not afford greater double jeopardy protection than does its federal counterpart.

"As an intermediate appellate court, we must follow the precedent of our Supreme Court along the path which our considered reading of that precedent lays out for us." *Burton* v. *Planning Commission*, 13 Conn. App. 400, 409, 536 A.2d 995 (1988), aff'd, 209 Conn. 609, 553 A.2d 161 (1989).

The trial court properly denied the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.