******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMES BAKER
(AC 37441)

Alvord, Mullins and Pellegrino, Js.

*Argued April 14—officially released September 6, 2016*

(Appeal from Superior Court, judicial district of Danbury, Carroll, J. [judgment]; Wenzel, J. [motion to correct illegal sentence]; Roraback, J. [motion to correct illegal sentence].)

*Deborah G. Stevenson*, assigned counsel, for the appellant (defendant).

*Jacob L. McChesney*, special deputy assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sean P. McGuinness*, assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. The defendant, James Baker, appeals from the judgment of the trial court denying his motion to correct an illegal sentence filed pursuant to Practice Book § 43-22.[1] After pleading guilty under the Alford doctrine[2] to possessing a weapon or dangerous instrument in a correctional institution in violation of General Statutes § 53a-174a (a),[3] the defendant was sentenced to eighteen months of imprisonment. The defendant claims on appeal that the trial court (1) improperly denied his motion to correct the eighteen month sentence because the sentence violates the double jeopardy clause[4] of the federal[5] constitution, and (2) abused its discretion by excluding evidence that was relevant to the disposition of the motion to correct. We affirm the judgment of the trial court.[6]

The following facts and procedural history are relevant to this appeal. On February 16, 1999, the defendant, who was an inmate at the Garner Correctional Institution, was involved in a physical altercation with other inmates. At the time of the altercation, the defendant was serving a thirty-two year sentence of imprisonment for two 1994 murder convictions. Department of Correction (department) officers observed the defendant attempt to assault another inmate by charging at the inmate with a sharp object in his hand. Department officers ordered the defendant to drop the object, but the defendant ignored their commands and charged at several other inmates with the object in his hand. After suppressing the altercation, department officers recovered the sharp object and determined that it was a shank that had been fabricated from white cloth, masking tape, and two metal prongs.

On the same day of the incident, department investigators interviewed the defendant, who pleaded guilty in a department administrative proceeding to three violations of prison policy: (1) impeding order; (2) contraband (dangerous instrument); and (3) fighting. Department officials then imposed the following disciplinary sanctions on the defendant: (1) three disciplinary reports; (2) loss of 120 days of statutory good time credit; (3) loss of commissary privileges for ninety days; (4) loss of visits for sixty days; (5) confinement to quarters for thirty days; (6) punitive segregation for seven days; (7) loss of telephone privileges for forty days; and (8) loss of mail privileges for sixty days. Furthermore, sometime in March or April of 1999, after determining that the defendant was a security risk, the department transferred him to the maximum security prison at Northern Correctional Institution (Northern). The defendant was incarcerated at Northern for approximately one year.

On April 28, 1999, the state charged the defendant with one count of possessing a weapon or dangerous

instrument in a correctional institution in violation of § 53a-174a (a). On October 13, 1999, the defendant pleaded guilty to that charge. The court sentenced the defendant to a period of eighteen months of incarceration to run consecutive to the sentence he already was serving for his previous murder convictions.

On August 9, 2013, the defendant filed a motion to correct an illegal sentence, which was amended on August 29, 2013 (amended motion). In the amended motion, the defendant asserted that the eighteen month sentence of incarceration violated the double jeopardy protections of the state and federal constitutions because the sentence and department sanctions constituted multiple punishments for the same offense. The defendant listed fourteen items that he alleged the department had imposed as administrative sanctions for his conduct in the 1999 prison incident. The first eight items were set forth previously in this opinion. The remaining six items related to (1) the defendant's transfer to Northern and (2) the effect of the eighteen month sentence on the defendant's ability to enter a halfway house.

Following an evidentiary hearing on the amended motion, the trial court, *Roraback, J.*, denied the defendant's motion. The court concluded that the eighteen month sentence was not imposed in violation of the defendant's protections against double jeopardy. In particular, the court ruled that the department sanctions were not "grossly disproportionate to the government's interest in maintaining prison order and discipline." Thereafter, the defendant filed a motion to reargue the matter, which the court granted. The court, however, affirmed its original ruling and denied the relief requested by the defendant. The court reiterated that the department sanctions did not violate the double jeopardy clause because they were not grossly disproportionate to the government's remedial interest in maintaining order and discipline. This appeal followed. Additional facts will be provided as necessary.

I

In his first claim, the defendant asserts that the trial court erred in denying the amended motion because the eighteen month sentence of imprisonment violates his constitutional right against double jeopardy. Specifically, he argues that imposing this sentence after the department already had sanctioned him violated the double jeopardy clause's prohibition on imposing multiple criminal punishments for the same offense. The state responds that, because the department sanctions did not constitute criminal punishment, the double jeopardy clause did not preclude the court from imposing the eighteen month sentence. We agree with the state and conclude that trial court properly denied the defendant's amended motion.

We begin with the standard of review and relevant legal principles. "Ordinarily, a claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is reviewed pursuant to the abuse of discretion standard." *State* v. *Tabone*, 279 Conn. 527, 534, 902 A.2d 1058 (2006). A double jeopardy claim, however, "presents a question of law, over which our review is plenary." *State* v. *Burnell*, 290 Conn. 634, 642, 966 A.2d 168 (2009). "[C]laims of double jeopardy involving multiple punishments present a question of law to which we afford plenary review." *State* v. *Tabone*, 292 Conn. 417, 439, 973 A.2d 74 (2009). "Because the issue of whether an administrative sanction constitutes punishment for purposes of double jeopardy is a question of law, [our] review [is] de novo." (Internal quotation marks omitted.) *State* v. *Duke*, 48 Conn. App. 71, 74, 708 A.2d 583, cert. denied, 244 Conn. 911, 713 A.2d 829 (1998).

Practice Book § 43-22 provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." Accordingly, "the trial court and this court, on appeal, have the power, at any time, to correct a sentence that is illegal." (Internal quotation marks omitted.) *State* v. *Constantopolous*, 68 Conn. App. 879, 882, 793 A.2d 278, cert. denied, 260 Conn. 927, 798 A.2d 971 (2002). "An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory." (Internal quotation marks omitted.) *State* v. *McNellis*, 15 Conn. App. 416, 443–44, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988).

The double jeopardy clause of the fifth amendment to the federal constitution provides in relevant part that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." The double jeopardy clause guarantees three specific protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Footnotes omitted.) *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled on other grounds by *Alabama* v. *Smith*, 490 U.S. 794, 798, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). The defendant has invoked the third of those protections—the prohibition on imposing multiple punishments for the same offense.

The multiple punishments protection, however, does not "prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment." (Internal quotation marks omitted.) *Hudson* v. *United States*, 522 U.S. 93, 98–99, 118 S. Ct. 488, 139 L.

Ed. 2d 450 (1997). "The Clause protects only against the imposition of multiple *criminal* punishments for the same offense . . . ." (Emphasis in original.) Id., 99. "[A legislature] may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense." *Helvering* v. *Mitchell*, 303 U.S. 391, 399, 58 S. Ct. 630, 82 L. Ed. 917 (1938). Accordingly, we must determine whether the department sanctions constitute criminal punishment for double jeopardy purposes.

The United States Supreme Court has prescribed a two-pronged test for determining whether a sanction constitutes criminal punishment. *Hudson* v. *United States*, supra, 522 U.S. 99–100; see *State* v. *Jimenez-Jaramill*, 134 Conn. App. 346, 368–73, 38 A.3d 239, cert. denied, 305 Conn. 913, 45 A.3d 100 (2012) (applying *Hudson*'s two-pronged test in determining that infraction for public disturbance was not criminal punishment for double jeopardy purposes). The first prong is statutory construction. *Hudson* v. *United States*, supra, 99. "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. . . . A court must first ask whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." (Citation omitted; internal quotation marks omitted.) Id. The fact that the power to issue sanctions "was conferred upon administrative agencies is prima facie evidence that [the legislature] intended to provide for a civil sanction." Id., 103.

Under the second prong, the court must ask "whether the statutory scheme was so punitive either in purpose or effect . . . as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." (Citation omitted; internal quotation marks omitted.) Id., 99. The court should make this inquiry even if it determines under the first prong that the legislature "indicated an intention to establish a civil penalty . . . ." (Internal quotation marks omitted.) Id. In making the second determination, the United States Supreme Court has articulated seven "useful guideposts" that a court should consider. Id. These factors include: "(1) [w]hether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned." (Internal quotation marks omitted.) Id., 99–100 (quoting *Kennedy* v. *Mendoza-Martinez*, 372 U.S.

144, 168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644 [1963]). These factors are "neither exhaustive nor dispositive." *United States* v. *Ward*, 448 U.S. 242, 249, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980).

"It is particularly appropriate to apply the factors flexibly in the context of prison discipline cases, which do not fit neatly into the matrix of double jeopardy doctrine . . . because in the prison context, virtually any form of sanction seems criminal and punitive as we commonly understand those terms." (Internal quotation marks omitted.) *Porter* v. *Coughlin*, 421 F.3d 141, 147 (2d Cir. 2005). "It is important to note . . . that these factors must be considered in relation to the statute on its face . . . ." (Internal quotation marks omitted.) *Hudson* v. *United States*, supra, 522 U.S. 100. "[O]nly the *clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty . . . ." (Emphasis added; internal quotation marks omitted.) Id.

Turning to the present case, *Hudson* first requires us to ask whether our legislature designated the statutory mechanism by which the department imposes sanctions as criminal or civil. We conclude that the legislature intended for the statutory mechanism to be civil in nature.

General Statutes § 18-81 provides in relevant part: "The Commissioner of Correction shall administer, coordinate and control the operations of the department and shall be responsible for the overall supervision and direction of all institutions, facilities and activities of the department. . . . The commissioner shall be responsible for establishing disciplinary . . . programs throughout the department. . . ." "Section 18-81 expressly permits the commissioner to promulgate the prison's administrative rules." *Beasley* v. *Commissioner of Correction*, 50 Conn. App. 421, 434–35, 718 A.2d 487 (1998), aff'd, 249 Conn. 499, 733 A.2d 833 (1999). Although the statute does not expressly label prison disciplinary sanctions as either criminal or civil, it implies that such sanctions are civil. The fact that the legislature has delegated the power to impose prison sanctions to an agency such as the department is prima facie evidence that the sanctions are civil. *Hudson* v. *United States*, supra, 522 U.S. 103; see *State* v. *Duke*, supra, 48 Conn. App. 77 ("because our legislature conferred the power to sanction on an administrative agency, we consider it prima facie evidence that the sanctions were intended to be civil rather than criminal in nature"); *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 284, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001) ("that the clear intent of the legislature in conferring the power to sanction on local zoning authorities is prima facie evidence that those daily fine sanctions are civil, and not criminal, in nature").

Moreover, the sanction mechanism is not located

within our state's penal code, as it instead relates to the "remedial purpose of allowing . . . prison officials to maintain order and discipline." *State* v. *Santiago*, 240 Conn. 97, 102, 689 A.2d 1108 (1997), overruled on other grounds by *State* v. *Crawford*, 257 Conn. 769, 779–80, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002). Indeed, our state Supreme Court previously observed that prison sanctions do not generally give rise to double jeopardy violations because they are "administrative sanctions . . . [that] serve the purpose of maintaining institutional order and security . . . ." Id., 101.

Having determined that our legislature intended to designate prison sanctions as civil penalties, we turn to *Hudson's* second prong. The second prong requires us to determine whether the statutory scheme is "so punitive either in purpose or effect . . . as to transform what was clearly intended as a civil remedy into a criminal penalty . . . ." (Citation omitted; internal quotation marks omitted.) *Hudson* v. *United States*, supra, 522 U.S. 99. We note at the outset that only the "*clearest proof* will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty . . . ." (Emphasis added; internal quotation marks omitted.) Id., 100. We conclude that the defendant has not provided the *clearest proof* that the department sanctions are so punitive in effect or purpose that they override the legislature's designation of the sanctions as civil.

The seven factors that the United States Supreme Court has identified as helpful in making this second inquiry are only "useful guideposts"; id., 99; and "we need not apply them rigidly." *Porter* v. *Coughlin*, supra, 421 F.3d 147. The factors are "neither exhaustive nor dispositive"; *United States* v. *Ward*, supra, 448 U.S. 249; and they "are to be applied flexibly." *Porter* v. *Coughlin*, supra, 148.

In the present case, the defendant received several department sanctions after the department found that he had engaged in fighting, the possession of a dangerous weapon, and the impediment of order. In particular, the department imposed the following sanctions: (1) three disciplinary reports; (2) loss of 120 days of statutory good time credit; (3) loss of commissary privileges for ninety days; (4) loss of visits for sixty days; (5) confinement to quarters for thirty days; (6) punitive segregation for seven days; (7) loss of telephone privileges for forty days; (8) loss of mail privileges for sixty days; and (9) transfer to the maximum security facility at Northern.

Although the defendant has not provided a substantive analysis of the relevant factors, a few of the factors appear to support the defendant's contention that some of the sanctions are criminal in nature. In particular, the first, fourth, and fifth factors weigh in the defendant's

favor.[7] Because the defendant already was incarcerated, most of the sanctions involve an "affirmative disability or restraint." (Internal quotation marks omitted.) *Hudson* v. *United States*, supra, 522 U.S. 99. All of the sanctions seem to "promote the traditional aims of punishment—retribution and deterrence," and the "behavior to which [they] apply is already a crime . . . ." Id.

The defendant relies mainly on the fourth factor, arguing that the sanctions "only [serve] to promote the traditional aims of punishment—retribution and deterrence." We note, however, that the "mere presence of [deterrence] is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." (Internal quotation marks omitted.) *Hudson* v. *United States*, supra, 522 U.S. 105. "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation of institutions . . . ." Id. "[A] civil or administrative sanction that serves a legitimate remedial purpose . . . does not give rise to a double jeopardy violation even if the sanction has some deterrent effect." *State* v. *Hickam*, 235 Conn. 614, 623, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1858, 134 L. Ed. 2d 951 (1996), overruled on other grounds by *State* v. *Crawford*, 257 Conn. 769, 779–80, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002). We conclude that the defendant's reliance on the fourth factor is unavailing because any deterrence resulting from the sanctions permissibly furthers the "remedial purpose of allowing . . . prison officials to maintain order and discipline." *State* v. *Santiago*, supra, 240 Conn. 102.

The sixth and seventh factors weigh heavily against a finding that the sanctions are criminal. Courts that have applied the factors to prison sanctions generally have afforded greater weight to the last two factors than to the first five factors. See *Porter* v. *Coughlin*, supra, 421 F.3d 148 ("[a]lthough several of the factors suggest that [the defendant's] sanction was punitive in nature, others suggest so strongly the presence of a legitimate, nonpunitive purpose that we must conclude the sanction was civil in nature"); *United States* v. *Mayes*, 158 F.3d 1215, 1223, 1224 (11th Cir. 1998) ("[I]n the prison context, virtually any form of sanction seems criminal and punitive as we commonly understand those terms. With that in mind, we recognize that many of the . . . factors may weigh in the [prisoner's] favor . . . . In this unique setting, we must take into account the fact that a prison's remedial and punitive interests are inextricably related. . . . [W]e factor into our analysis the importance of granting some deference to the judgments of prison authorities in determining what is necessary and proper to preserve institutional order and discipline, and to encourage good conduct." [Internal quotation marks omitted.]), cert. denied, 525 U.S. 1185,

119 S. Ct. 1130, 143 L. Ed. 2d 123 (1999).

Regarding the sixth factor, the department sanctions clearly have "an alternative purpose to which [they] may rationally be connected . . . ." *Hudson* v. *United States*, supra, 522 U.S. 99. Indeed, our Supreme Court expressly has recognized that prison sanctions serve the "remedial purpose of allowing the prison officials to maintain order and discipline." *State* v. *Santiago*, supra, 240 Conn. 102. "The institutional consideration of internal security in the correction facilities themselves is essential to all other correction goals." *State* v. *Walker*, 35 Conn. App. 431, 435, 646 A.2d 209, cert. denied, 231 Conn. 916, 648 A.2d 159 (1994). "Correction authorities must be allowed to take appropriate action to ensure the safety of inmates and correction employees; they must be permitted promptly to sanction misconduct within the institution so as to preserve order and discipline." Id., 436–37. Therefore, "[e]nsuring security and order at the institution is a permissible nonpunitive objective . . . ." *Bell* v. *Wolfish*, 441 U.S. 520, 561, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). "The need to maintain order . . . is a legitimate nonpunitive interest, even if it sometimes requires that prison officials take action of a punitive character." *Porter* v. *Coughlin*, supra, 421 F.3d 148. Accordingly, we conclude that the sixth factor militates against a conclusion that the department sanctions are criminal because they are rationally connected to the nonpunitive purpose of maintaining safety, order, and discipline within the prison.

Regarding the seventh factor, the department sanctions are not "excessive in relation to the alternative purpose assigned." (Internal quotation marks omitted.) *Hudson* v. *United States*, supra, 522 U.S. 100. The types of sanctions the department may impose are not excessive in light of how inmate misconduct, like the defendant's violent behavior in this case, seriously undermines discipline, safety, and order within the prison. See, e.g., *State* v. *Walker*, supra, 35 Conn. App. 436–37 (reasonable to segregate inmate for "the serious offense" of assaulting correction employee because "violent behavior could be detrimental to maintaining control throughout the correction facility . . . [and] [c]orrection authorities must be allowed to take appropriate action to ensure the safety of inmates and correction employees"). "Because the realities of running a correctional institution are complex and difficult, the courts give wide-ranging deference to the decisions of prison administrators in considering what is necessary and proper to preserve order and discipline." Id., 435.

Our courts regularly have held that sanctions similar to those imposed on the defendant, for misconduct similar to the defendant's actions, are not disproportionate to the department's remedial interests. See *State* v. *Santiago*, supra, 240 Conn. 99–102 (ten days of puni-

tive segregation, thirty days loss of telephone and mail privileges, and loss of forty-five days of good time credit for possessing shank); *State* v. *Walker*, supra, 35 Conn. App. 432, 435–37 (placement in administrative isolation, fifteen days of punitive segregation, and thirty days confinement to quarters for punching correction officer in head and jaw); *State* v. *King*, Superior Court, judicial district of New London, Docket No. CR-01-89268-S (May 15, 2003) (thirty days of punitive segregation, ninety days loss of phone privileges, ninety days loss of commissary privileges, sixty days loss of visits, and transfer to administrative segregation at Northern for assaulting correction officer).[8]

In sum, under *Hudson*'s first prong, we conclude that the legislature intended the department sanctions to be civil in nature, not criminal. Under *Hudson*'s second prong, a careful weighing of the relevant factors demonstrates that the *clearest proof* that the department sanctions are so punitive in purpose or effect as to override the legislature's intent does not exist in this case. We conclude that the department sanctions were not criminal in nature and that they therefore did not constitute punishment for double jeopardy purposes.

Accordingly, because we conclude that the department sanctions do not constitute criminal punishment, the trial court properly found that the eighteen month prison sentence did not violate the double jeopardy clause's prohibition on imposing multiple punishments for the same offense, and, therefore, properly denied the motion to correct an illegal sentence.

II

The defendant's second claim on appeal is that the trial court improperly excluded evidence regarding the collateral consequences of the eighteen month prison sentence. Specifically, he argues that evidence suggesting that the eighteen month sentence had the consequence of delaying his release to a halfway house was relevant to the double jeopardy analysis. We do not reach the merits of this claim because the defendant has not briefed how he was harmed by the allegedly improper evidentiary ruling. Accordingly, we decline to review it.

The following additional facts and procedural history are relevant to this claim. At two points in the evidentiary hearing, defense counsel attempted to admit evidence relating to how the eighteen month sentence affected the defendant's ability to enter a halfway house. First, during direct examination of a department record specialist, counsel asked the witness "if the defendant could go to a halfway house as a result of this eighteen month sentence," and "if the defendant has a detainer because of this eighteen months." The state objected, arguing that the testimony was irrelevant. The court sustained the state's objection and

explained: "The consequences of the sentence, I don't think, are relevant. It's the fact that the sentence was imposed that is at the heart of this matter. . . . I don't think the court is going to be looking to the severity of the sentence or the duration of the sentence. Rather . . . I think the inquiry is going to be whether any sentence was appropriate because, if double jeopardy is to be implicated, it would necessarily mean that no sentence could be imposed."

Subsequently, with the defendant on the witness stand, defense counsel attempted the following examination:

"Q. [T]his eighteen months, that's consecutive to the current sentence?"

"A. Yes.

"Q. Okay. Now does that affect your time that you're now serving—I mean, in a halfway house—can you get out to a halfway house?

"A. No."

After the state objected, the court sustained the objection and stated: "Okay. And again, the court believes the inquiry goes not to the severity of any sentence that might be imposed, but as to the question of whether any sentence could lawfully have been imposed. So I'm going to sustain the objection."

"The trial court has wide discretion to determine the relevancy of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 23, 1 A.3d 76 (2010). "[I]n order to establish reversible error on an evidentiary impropriety, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. . . . This requires that the defendant demonstrate that it is more probable than not that the erroneous action of the court affected the result." (Citations omitted; internal quotation marks omitted.) *State* v. *Kirsch*, 263 Conn. 390, 412, 820 A.2d 236 (2003).

"It is well settled that, absent structural error, the mere fact that a trial court rendered an improper ruling does not entitle the party challenging that ruling to obtain a new trial. An improper ruling must also be harmful to justify such relief. . . . The harmfulness of an improper ruling is material irrespective of whether the ruling is subject to review under an abuse of discretion standard or a plenary review standard. . . . When the ruling at issue is not of constitutional dimensions, the party challenging the ruling bears the burden of proving harm." (Internal quotation marks omitted.) *In re James O.*, 160 Conn. App. 506, 527, 127 A.3d 375 (2015), aff'd, 322 Conn. 636,      A.3d      (2016).

In the present case, the defendant has briefed a claim

that the court erred in precluding evidence regarding the potential collateral consequences of his eighteen month sentence and has failed to address how the evidentiary ruling was harmful. Accordingly, we decline to review the claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] General Statutes § 53a-174a provides: "(a) A person is guilty of possession of a weapon or dangerous instrument in a correctional institution when, being an inmate of such institution, he knowingly makes, conveys from place to place or has in his possession or under his control any firearm, weapon, dangerous instrument, explosive, or any other substance or thing designed to kill, injure or disable.

"(b) Possession of a weapon or dangerous instrument in a correctional institution is a class B felony."

[4] The fifth amendment to the United States constitution provides in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ."

[5] The defendant also invokes the protections of our state constitution. "[When] . . . the defendant has not presented a separate analysis of his double jeopardy claim under the state constitution, we confine our analysis to the application of the federal constitution's double jeopardy bar." (Internal quotation marks omitted.) *State* v. *Butler*, 262 Conn. 167, 174 n.6, 810 A.2d 791 (2002). Therefore, we analyze the defendant's claim only under the fifth amendment to the federal constitution.

[6] On appeal, the defendant argues for the first time that the sentence also violates the prohibition against cruel and unusual punishment under the eighth amendment to the federal constitution. Although the defendant asserts that this claim is adequately preserved for our review, we disagree. The defendant's operative motion that is the subject of this appeal did not contain an eighth amendment claim. Moreover, the parties did not address an eighth amendment claim at trial, and the trial court neither considered nor ruled upon any such claim. "This court previously has recognized that [i]t is not appropriate to review an unpreserved claim of an illegal sentence for the first time on appeal." (Internal quotation marks omitted.) *State* v. *Crump*, 145 Conn. App. 749, 766, 75 A.3d 758, cert. denied, 310 Conn. 947, 80 A.3d 906 (2013). Furthermore, we have declined to review in other appeals such unpreserved claims under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine. *State* v. *Starks*, 121 Conn. App. 581, 592, 997 A.2d 546 (2010). Accordingly, we decline to review the defendant's unpreserved eighth amendment claim.

[7] The record does not indicate whether the sanctions implicate the third factor, which asks whether the sanctions were imposed only after a finding of scienter. *Hudson* v. *United States*, supra, 522 U.S. 99. Similarly, the defendant did not address the second factor, which asks whether the sanctions have been historically regarded as punishment. Id.

[8] Regarding the defendant's transfer to Northern, which the defendant emphasized on appeal, courts in other jurisdictions consistently have held that the disciplinary transfer of an inmate is not a criminal punishment that implicates the double jeopardy clause. See, e.g., *United States* v. *Colon*, 246 Fed. Appx. 153, 155–56 (3d Cir. 2007) (disciplinary transfer of inmate who attempted to smuggle heroin into prison), cert. denied, 552 U.S. 1128, 128 S. Ct. 948, 169 L. Ed. 2d 780 (2008); *United States* v. *Mayes*, supra, 158 F.3d 1217, 1224–25 (disciplinary transfer to high security facility for inmates who participated in prison riot); *United States* v. *Newby*, 11 F.3d 1143, 1144–46 (3d Cir. 1993) (disciplinary transfer of prisoners who assaulted prison guards), cert. denied, 513 U.S. 834, 115 S. Ct. 111, 130 L. Ed. 2d 58 (1994); *State* v. *Beck*, 545 N.W.2d 811, 812, 816 (S.D. 1996) (transfer to higher security facility for inmate who was in possession of three marijuana cigarettes).