******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* OSVALDO DEJESUS
(AC 41151)

DiPentima, C. J., and Keller and Bright, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of sexual assault in the fourth
degree and risk of injury to a child in connection with his sexual abuse
of the minor victim, the defendant appealed to this court. *Held*:

1. The defendant could not prevail on his unpreserved claim that the trial
court improperly admitted into evidence expert testimony from M, an
expert in forensic interviewing, regarding how child victims of sexual
abuse behave and how they disclose their abuse, which he claimed
was irrelevant and unduly prejudicial and constituted impermissible
vouching for the victim's credibility:

    a. The trial court did not commit plain error in admitting M's expert
testimony; although M testified generally about the nature and purpose
of forensic interviews, the general characteristics of sexually abused
children, the different types of disclosures and several factors that may
trigger those types of disclosures, M did not opine that the victim exhib-
ited any of the characteristics she discussed but, rather, acknowledged
the limitations of her testimony on cross-examination, noting that she
did not know anything about the victim or her forensic interview, and
stated that she was not offering any opinion about the victim's disclosure
process or the truthfulness of any of her disclosures, and, therefore,
M's testimony was consistent with testimony that our Supreme Court,
in *State* v. *Taylor G.* (315 Conn. 734) and *State* v. *Spigarolo* (210 Conn.
359), previously has determined to be admissible.

    b. This court declined to exercise its supervisory authority over the
administration of justice to preclude, as a matter of law, the admission
of expert testimony on the characteristics of children who report sexual
abuse, as our Supreme Court has clearly held that such testimony is
admissible, and this court could not use its supervisory authority to
overrule binding Supreme Court precedent.

2. The defendant's claim that the trial court abused its discretion during a
pretrial hearing by refusing to permit him to ask the victim leading
questions on direct examination was unavailing; there was nothing in
the record to suggest that the victim's testimony would have been differ-
ent had defense counsel been permitted to ask her leading questions,
and, therefore, as the defendant conceded during oral argument before
this court, he could not establish that the trial court's alleged error
caused him harm.

Argued September 5—officially released November 12, 2019

*Procedural History*

Substitute information charging the defendant with
two counts each of the crimes of sexual assault in the
first degree and sexual assault in the fourth degree, and
with four counts of the crime of risk of injury to a child,
brought to the Superior Court in the judicial district of
New Haven and tried to the jury before *Alander, J.*;
verdict and judgment of guilty of two counts of sexual
assault in the fourth degree and four counts of risk of
injury to a child, from which the defendant appealed
to this court. *Affirmed*.

*Norman A. Pattis*, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's
attorney, with whom, on the brief, were *Patrick Griffin*,
state's attorney, and *Maxine Wilensky*, senior assistant
state's attorney, for the appellee (state).

*Opinion*

BRIGHT, J. The defendant, Osvaldo DeJesus, appeals from the judgment of conviction, rendered after a jury trial, of four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), and two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).[1] On appeal, the defendant claims that the trial court (1) improperly admitted into evidence expert testimony that amounted to impermissible bolstering of the victim's credibility and (2) erred in concluding, during a pretrial hearing, that the victim was not an adverse party, thereby precluding defense counsel from asking the victim leading questions on direct examination. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. The defendant and the victim's mother, M,[2] were in a relationship when, in 2003 or 2004, the defendant moved into the apartment M shared with her two daughters, D and the victim. At the time, the victim was two or three years old. Thereafter, the defendant, M, and her daughters moved to a condominium. In 2005, M gave birth to the defendant's son, S, and the five of them shared the condominium.

In 2008, when the victim was eight years old, the defendant began a pattern of sexually assaulting her in the bedroom the victim shared with D. Over the course of the next two years, the defendant sexually abused the victim both in and out of the home. When the victim was ten years old, she began menstruating, prompting the defendant to stop the sexual abuse. In 2013, the defendant and M ended their relationship and, at M's insistence, the defendant moved out of the condominium. Because S continued to live with M, the defendant would stop by the condominium unannounced and would stay there until S went to sleep. The victim withheld disclosure of the abuses she had suffered until she was thirteen years old, at which point she confided in her cousin, C. Unable to articulate verbally what had happened, the victim disclosed the news to C by way of a text message with the expectation that C would keep it a secret. Several days later, the victim's aunt discovered the text message and relayed the information to M. That night, M took the victim to the police station where she gave videotaped and written statements concerning the defendant's sexual abuse. Three days later, the victim went to the child sexual abuse clinic at Yale New Haven Hospital where she had a videotaped forensic interview with Rebecha Sullivan, a licensed clinical social worker.

On the basis of the victim's complaint, the defendant was charged with two counts of sexual assault in the first degree, four counts of risk of injury to a child,

and two counts of sexual assault in the fourth degree. Following a jury trial, the defendant was convicted of all four counts of risk of injury to a child and both counts of sexual assault in the fourth degree. He was acquitted of the remaining charges. See footnote 1 of this opinion. The court imposed a total effective sentence of thirty-two years of incarceration, execution suspended after twenty years, with fifteen years of probation and ten years of sex offender registration. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims for the first time on appeal that the trial court improperly admitted into evidence expert testimony regarding how child victims of sexual abuse behave and how they disclose their abuse. More specifically, the defendant argues that the court erred by admitting the testimony of Donna Meyer, the state's expert in forensic interviewing, despite the fact that she had never examined the victim. The defendant concedes that he did not preserve this claim at trial, arguing instead that this court should reverse the judgment of conviction under the plain error doctrine. In the alternative, the defendant asks that we exercise our supervisory authority over the administration of justice to preclude the admission of testimony from forensic interviewers on the characteristics of children who disclose sexual abuse and the different manners in which they disclose such abuse. According to the defendant, such evidence is irrelevant to whether a particular complainant is telling the truth, is unduly prejudicial because it suggests that all children who disclose sexual abuse were, in fact, abused, and constitutes improper "vouching" for the complainant's credibility. Because our Supreme Court has made clear that such testimony is admissible, we reject the defendant's arguments.

The following additional facts are relevant to our resolution of the defendant's claim. The state called Meyer as an expert witness in forensic interviewing to discuss generally forensic interviewing and the dynamics of child sexual abuse victims. Meyer testified at length as to what forensic interviews entail,[3] the different types of disclosures,[4] what may cause a delayed disclosure,[5] and the effects domestic violence in the home has on child sexual assault victims.[6] She also discussed how a victim's relationship with his or her abuser can impact the delay in disclosure, stating that "the closer the relationship, the longer the delay in general, that's what research has shown." Meyer went on to discuss the effect that sexual abuse has on a victim's sleep, testifying that "[e]very child is unique, so it depends on a lot of different things, but often times children who have been sexually abused will experience nightmares, some children may experience bed wetting, other children may—may experience inability to fall

asleep . . . ." On cross-examination, Meyer agreed that she knew nothing about the victim or her forensic interview, and was not opining on the disclosure process in this case. She further confirmed that she was not opining as to whether a particular disclosure was truthful.

A

As previously noted in this opinion, the defendant did not object to Meyer's testimony, and, therefore, he seeks reversal under the plain error doctrine. Our plain error doctrine is well established. "The plain error doctrine is based on Practice Book § 60-5, which provides in relevant part: The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . . The plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *Cator* v. *Commissioner of Correction*, 181 Conn. App. 167, 177 n.3, 185 A.3d 601, cert. denied, 329 Conn. 902, 184 A.3d 1214 (2018).

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily discernable on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. . . . [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 77, 60 A.3d 271 (2013).

The defendant's contention that Meyer's testimony regarding the characteristics of children who disclose sexual abuse and the manner in which they disclose the abuse was irrelevant and unduly prejudicial, and constituted impermissible vouching for the credibility of the victim is wholly inconsistent with the decisions of our Supreme Court. In *State* v. *Spigarolo*, 210 Conn. 359, 378, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989), our Supreme Court addressed this exact issue, noting the value of expert testimony because the nuances of child sexual abuse trauma are beyond the average person's understanding. The court stated: "Consequently, expert testimony that minor victims typically fail to provide complete or consistent disclosures of the alleged sexual abuse is of

valuable assistance to the trier in assessing the minor victim's credibility. As the Oregon Supreme Court stated: It would be useful to the jury to know that . . . many child victims are ambivalent about the forcefulness with which they want to pursue the complaint, and it is not uncommon for them to deny the act ever happened. Explaining this superficially bizarre behavior by identifying its emotional antecedents could help the jury better assess the [witness'] credibility." (Internal quotation marks omitted.) Id. The court concluded that such expert testimony did not usurp the jury's function of assessing witness credibility. The court held that, "where defense counsel has sought to impeach the credibility of a complaining minor witness in a sexual abuse case, based on inconsistency, incompleteness or recantation of the victim's disclosures pertaining to the alleged incidents, the state may offer expert testimony that seeks to demonstrate or explain in general terms the behavioral characteristics of child abuse victims in disclosing alleged incidents." Id., 380.

In *State* v. *Taylor G.*, 315 Conn. 734, 765, 110 A.3d 338 (2015), our Supreme Court relied on *Spigarolo* to reach the same conclusion, holding that the trial court did not err when it allowed expert witness testimony on the characteristics of child sexual abuse victims. In *Taylor G.*, the state called its expert witness, a forensic interviewer at Yale New Haven Hospital's child sexual abuse clinic, to show the jury the video of her forensic interview with the complainant after she testified about the general characteristics of sexually abused children. Id., 755–57. The defendant filed a motion in limine challenging the admissibility of the state's expert witness' testimony, which the trial court denied. Id., 755. After the jury returned a guilty verdict, but, prior to sentencing, the defendant filed a motion for a new trial, arguing that the state's witness improperly vouched for the complainant's credibility through testimony that our Supreme Court had deemed inadmissible in *State* v. *Favoccia*, 306 Conn. 770, 51 A.3d 1002 (2012).[7] *State* v. *Taylor G.*, supra, 758. In affirming the judgment of conviction, our Supreme Court reiterated that expert testimony regarding the general characteristics of child sexual assault victims is admissible. Id., 765. The court stated: "The purpose of expert testimony regarding the general characteristics of sexually abused children is to provide information that will assist the jury in evaluating the credibility of the complainant. As we stated in *Spigarolo*, this type 'of expert testimony is admissible because the consequences of the unique trauma experienced by [child] victims of sexual abuse are matters beyond the understanding of the average person. . . . Consequently, expert testimony . . . is of valuable assistance to the trier in assessing the . . . victim's credibility.' . . . *State* v. *Spigarolo*, supra, 210 Conn. 378. It is thus to be expected that a complainant will demonstrate behavior similar or identical to the behav-

ior of other children who have been sexually abused. Indeed, if that were not the case, expert testimony on the subject would have no relevance. More significantly, [the state's expert witness], unlike the expert in *Favoccia*, never drew a comparison between [the victim] and the characteristics she described as typical of child sexual abuse victims generally. Accordingly we conclude that the defendant's claim must fail." *State* v. *Taylor G.*, supra, 765.

Applying these principles to the present case, we conclude that the trial court did not commit plain error in admitting Meyer's expert testimony. *Spigarolo* and *Taylor G.* clearly allow for the use of the type of testimony at issue here. As was true of the expert in *Taylor G.*, in this case, Meyer testified generally about the nature and purpose of forensic interviews, the general characteristics of sexually abused children, the different types of disclosures, and several factors that may trigger those types of disclosures. At no point in Meyer's testimony did she opine that the victim exhibited any of the characteristics she discussed. To the contrary, Meyer acknowledged the limitations of her testimony on cross-examination, noting that she did not know anything about the victim or her forensic interview. She further testified that she was not offering any opinion about the victim's disclosure process or the truthfulness of any of her disclosures. Given that Meyer's testimony was in line with what our Supreme Court determined to be permissible in *Spigarolo* and *Taylor G.*, the court did not err, let alone commit plain error, in allowing her testimony. Accordingly, the defendant's claim fails.

### B

In the alternative, the defendant asks this court to exercise its supervisory authority over the administration of justice to preclude, as a matter of law, the admission of expert testimony on the characteristics of children who report sexual abuse. As noted in part I A of this opinion, our Supreme Court clearly has held that such testimony is admissible. It is well established that, as an intermediate appellate court, we are required to follow the decisions of our Supreme Court. See *Stuart* v. *Stuart*, 297 Conn. 26, 45–46, 996 A.2d 259 (2010) ("it is manifest to our hierarchical judicial system that [the Supreme Court] has the final say on matters of Connecticut law and that the Appellate Court . . . [is] bound by [its] precedent"); *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319 ("[W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." [Internal quotation marks omitted.]), cert. denied, 288 Conn. 902, 952 A.2d 811 (2008). Consequently, we are unable to use our supervisory authority effectively to overrule binding Supreme Court precedent. We, thus, decline the defendant's invitation that we do so.

## II

The defendant also claims that during a pretrial hearing, the trial court abused its discretion by refusing to permit him to ask the victim leading questions on direct examination.

The following additional facts are relevant to our resolution of the defendant's second claim on appeal. On May 9, 2017, the defendant called the victim to testify at a pretrial hearing regarding his motion to suppress portions of the victim's forensic interview as inadmissible hearsay.[8] During the defendant's direct examination of the victim, he asked her a series of leading questions. The state objected on the basis that the defendant improperly was leading the witness on direct examination, to which the defendant responded that "under [§] 6-8 (b) (1) [of the Connecticut Code of Evidence], I'm asking questions of a party that is aligned as an adverse party . . . ." The court disagreed with the contention that the victim was an adverse party and sustained the state's objection, but noted that if the victim became a hostile witness then it would allow leading questions. The defendant did not claim, thereafter, that the victim was a hostile witness.

We begin with the applicable standard of review. "[I]n order to establish reversible error on an evidentiary impropriety, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. . . . This requires that the defendant demonstrate that it is more probable than not that the erroneous action of the court affected the result. . . .

"It is well settled that, absent structural error, the mere fact that a trial court rendered an improper ruling does not entitle the party challenging that ruling to obtain a new trial. *An improper ruling must also be harmful to justify such relief.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Baker*, 168 Conn. App. 19, 36, 145 A.3d 955, cert. denied, 323 Conn. 932, 150 A.3d 232 (2016).

We need not address the defendant's novel claim that a complaining witness in a criminal case should be considered an adverse party under § 6-8 of the Connecticut Code of Evidence because the defendant essentially has conceded that he cannot demonstrate harm resulting from the court's alleged abuse of discretion.[9] Having reviewed the record, we agree that there is nothing that suggests that the victim's testimony would have been different had defense counsel been permitted to ask her leading questions. Because the defendant cannot establish that the court's alleged error caused him harm, his claim necessarily fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant also was charged with two counts of sexual assault in

the first degree in violation of General Statutes § 53a-70 (a) (1). The jury found the defendant not guilty of those charges.

[2] In accordance with our policy of protecting the privacy interests of victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] At trial, Meyer testified that a forensic interview "is a fact-finding interview that's used to gather information from the child in a supportive, nonleading, developmentally appropriate way . . . that all the team members need so that . . . as a forensic interviewer I need to not just . . . get one piece of information, but information that all members of the [multidisciplinary investigation team] would be looking for and needing to minimize that secondary need for interviews."

[4] Meyer testified as follows: "[T]here's three different ways; it's accidental, purposeful and prompted. So, the accidental is the one I just mentioned where it comes out by accident and you see those most often with young children who . . . you know, may not be aware of it, say something during bathing, see it with the mom looking at teen's phone, may see it that way, or somebody dropping a note at school. Those are all accident. The purposeful is when that child has made a conscious decision that, for whatever reason, they can no longer [withhold], and they choose to report it to somebody who can help stop it. And then the third, and often we see most, is a prompted, and that is where, you know, the child, for some reason, whether it be that they told a friend and the friend told a teacher, or . . . news came out on TV about a sexual assault and a parent questioned them or something, so it was prompted by another event, but it was not their initial intent to come out and talk about it."

[5] Meyer testified as follows: "There are several reasons why a child may or may not disclose. Some of the reasons that a child may disclose [are] that . . . it becomes safe for them because the perpetrator or the person who has been doing the abuse is no longer in the house; it may be that they . . . are at an age—or their sibling is of an age when they first started getting abused, and they want to protect that child . . . [or] it may be because they just can no longer take it. There are lots of different ways disclosures come out and, based on how they come out, there would be reasons as to why they . . . delayed or disclosed."

[6] Meyer testified that "[d]omestic violence in a home is a strong deterrent because . . . sexual abuse is often about control and in domestic violence there is always somebody who is in control. And, so, the child may really fear that, you know, if they do tell that some of the threats may be carried out; they've seen violence in the home. . . . Battering homes are a huge deterrent for children telling out of fear."

[7] In *Favoccia*, the court determined that the expert witness' testimony at issue did amount to impermissible vouching, concluding that, "although expert witnesses may testify about the general behavioral characteristics of sexual abuse victims, they cross the line into impermissible vouching and ultimate issue testimony when they opine that a particular complainant has exhibited those general behavioral characteristics." *State* v. *Favoccia*, supra, 306 Conn. 780.

[8] The defendant argued that the victim's testimony during her forensic interview was inadmissible hearsay not recognized by the medical diagnosis and treatment exception under § 8-3 (5) of the Connecticut Code of Evidence. In support of his motion, the defendant sought to establish, through the victim's testimony, that she did not attend the interview for medical diagnosis or treatment. "The admissibility of statements offered under the medical diagnosis and treatment exception to the hearsay rule turns on whether the declarant was seeking medical diagnosis or treatment, and the statements are reasonably pertinent to achieving those ends." (Internal quotation marks omitted.) *State* v. *Estrella J.C.*, 169 Conn. App. 56, 72, 148 A.3d 594 (2016).

[9] At the close of oral argument before this court, counsel for the defendant stated: "I have to concede . . . [the state's] got me on the prejudice prong. I don't think I can demonstrate that here. I don't want to concede my argument, but I think the record is what it is here."